163 N.J. Super. 542 (1978)
395 A.2d 261
THE BERG AGENCY, A NEW JERSEY CORPORATION, AND LAWRENCE PINILIS, INDIVIDUALLY, PLAINTIFFS,
v.
THE TOWNSHIP OF MAPLEWOOD, TOWN OF WEST ORANGE, AND VILLAGE OF SOUTH ORANGE, MUNICIPAL CORPORATIONS OF THE STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided November 8, 1978.
*544 Mr. John M. Iatesta for plaintiffs (Messrs. Wilentz, Goldman and Spitzer, attorneys).
Mr. Mortimer Katz for defendant Township of Maplewood.
Mr. Milton Malkin for defendant Town of West Orange.
Mr. Joseph A. Clarken, Jr. for defendant Village of South Orange (Messrs. Fox, Schackner, Mastrangelo and Clarken, attorneys; Mr. Donald C. Fox, of counsel).
Mr. Jonathan M. Hyman submitted a brief on behalf of amicus curiae A.C.L.U of New Jersey (Mr. Eric Neisser of counsel).
HARTH, J.C.C. (temporarily assigned).
In issue in this declaratory judgment proceeding is the constitutionality, vel non, of those sections of ordinances enacted in the defendant Towns of Maplewood, West Orange and South Orange which prohibit or regulate the use of "for sale" and "sold" signs on private residential property.
*545 Plaintiff Lawrence Pinilis was the owner of a one-family house located in Maplewood in a residential zone where signs advertising that a house is for sale, or sold, are prohibited.
Plaintiff Berg Agency is a licensed real estate brokerage firm with offices throughout New Jersey and which maintains an office in defendant Town of West Orange. It belongs to the Board of Realtors of the Oranges and Maplewood and in the course of its business lists and sells homes located in the three defendant towns. Pinilis listed his house for sale with the Berg Agency. Despite the Berg Agency's efforts, which included newspaper advertising, the house remained unsold for a considerable period of time. In an effort to stimulate sales activity Pinilis took advantage of one of the services offered by the Berg Agency, which was the posting of a "for sale" sign on the Pinilis' lawn.
Although informed by the authorities that the sign was in violation of Ordinance 7.03, "Signs Prohibited," which reads as follows:
7.03-1. Roof Signs and Marquee Signs as defined in the Building Code and billboards, strings of pennants, advertising flags, and any modifications thereof.
7.03-2. Political, For Sale (or Sold) and For Rent (or Rented) Signs in one (1) and two (2) Family Residential Zones and Garden Apartment Zones, except For Sale (Sold) or For Rent (Rented) on Vacant Land or New Construction,
Pinilis refused to remove it. A summons was issued and the matter carried pending the outcome of this action.
With respect to the Town of West Orange, the Berg Agency placed a similar "for sale" sign at 1 Bradley Terrace in West Orange, which resulted in a West Orange officer sending a letter to it advising that the sign should be removed as it was in violation of West Orange Ordinance 427-77. Subsection 25-10.5(c) of that ordinance provides:
On any improved residential property, a temporary real estate "for sale," "for rent," or "sold" sign erected by the owner not over 12 square feet in area when located behind the prevailing front *546 line on the block, except that on land where garden apartments are situated or upon vacant land, said signs may be erected by the owner or his real estate broker. On all commercial and industrial properties, said signs may be erected by either the owner or his real estate broker, whether improved or vacant.
The South Orange ordinance, which is also challenged as being too unduly restrictive to be constitutional, reads as follows:
Section 2009.1(e):
Signs advertising premises, or any portion thereof, for sale or for rent on the premises on which they are displayed shall not exceed nine (9) square feet in area in Residence "C" zone. Nothing herein contained shall prevent an owner from putting up such a sign in Residence "A" or Residence "B" zones, not exceeding nine (9) square feet, which sign must be set back at least five (5) feet from any boundary line.
It is apparent that a fair reading of the West Orange and South Orange ordinance provisions does not indicate that such provisions regulate the content of the real estate sign. However, the pertinent provision of the West Orange ordinance as stipulated has been interpreted by that town to regulate the use of real estate signs as follows: (1) signs are limited to 12 square feet in area; (2) they must be located behind the prevailing front line of the block; (3) the legend on a sign is limited to "for sale," "for rent" or "sold," and the telephone numbers of both the property owner and broker; (4) a broker may erect his own sign on vacant land regardless of zone.
The pertinent provisions of the South Orange ordinance have been interpreted and applied by that town to regulate the use of real estate signs in the following manner: (1) only one sign may be erected on any residential property; (2) no sign may exceed nine square feet in area; (3) every sign must be set back at least five feet from any boundary line; (4) prior to the erection of a sign the property owner must inform the building inspector of the date on which the sign will first be displayed; (5) the sign is permitted to be displayed *547 for a 90-day period, with an opportunity for renewal, provided there is notice of intention to renew prior to the expiration of the period; (6) the legend on the sign is limited to the words "for sale" or "for rent," the property owner's name and telephone numbers of both the owner and realtor; signs with the word "sold" are prohibited; (7) signs may be erected by either the property owner or broker.
Evidence submitted on behalf of Maplewood showed that the sign prohibition was originally requested by the Board of Realtors of the Oranges and Maplewood by letter dated July 13, 1972. Portions of the letter indicate the reasoning behind the request:
The National Association of Realtor Boards, of which this Board of Realtors is a member, adopted a program to "MAKE AMERICA BEAUTIFUL" several months ago. As you are no doubt aware, there is also a national program to "MAKE AMERICA BEAUTIFUL." In our efforts to implement these programs at the grass roots level, we find that one of our own business practices runs contrary to these aims  the placing of real estate signs in residential areas.
Although it has been the policy of our Board since 1937 to discourage the erection of signs in all residential areas, we have no powers to enforce this policy. We, therefore, respectfully request that an ordinance be adopted by the Township of Maplewood prohibiting all signs in residential zones. We are keenly aware that the adoption of such an ordinance will take from us a very beneficial tool of our field of endeavor. However, we sincerely believe the best interest of the public will be served by this action.
* * * * * * * *
In support of this request, we submit the following observations:
1  Signs are an extension of commerce into the residential zones contrary to the intent of good zoning practices.
2  Signs adversely affect the aesthetic values of residential areas.
3  A profusion of signs tend to adversely affect the market value of properties in a given neighborhood.
4  Signs tend to invite vandalism and in some instances, burglaries.
Additional evidence submitted by Maplewood shows that in the five-year period preceding 1972 and the enactment of *548 Ordinance 7.03, the number of annual residential sales ranged from 162 to 211, with an average of 180.4. The annual sales in the five years subsequent to 1972 ranged from 201 to 288, with an annual average of 234.6. The above are sales by real estate brokers involving homes in Maplewood in an area that has been "built up," with no additional available residential lots for building since the enactment of the ordinance. The court finds the above evidence as fact.
Specifically as to the Maplewood ordinance, which invokes a total prohibition of "for sale" signs on residential privately-owned property, plaintiffs object to the disallowance of the use of the Berg Agency sign. This sign consists of three panels: a 27" x 6" top panel which provides the information "for sale" or "sold"; an 18" x 24" middle panel which provides the information, "the Real Estate Place  The Berg Agency" and the telephone number of the agency; and the bottom panel, a 24" x 6" panel which provides the information, "one-year warranty." The one-year warranty represents to the public that the seller of the residential property has procured an American Home Field warranty. This warranty protects the buyer of the residential property up to one year after the purchase. This warranty covers all major systems of residential property in question (i.e., electrical, plumbing and hot water heater).
Plaintiffs Berg Agency and Pinilis seek a declaratory judgment that the provision of the Maplewood ordinance in question is unconstitutional on its face, and the Berg Agency seeks a similar judgment that the pertinent provisions of the South Orange and West Orange ordinances, as interpreted and applied to it, are all violative of the First and Fourteenth Amendments.
Specifically as to the South Orange ordinance, plaintiff Berg Agency objects to those regulations, as interpreted, which prohibit the word "sold" from appearing on the sign. Additionally, as to both the West Orange and South Orange ordinances, Berg Agency objects to those regulations, as interpreted, *549 which prohibit the placing of the realtor's name on the sign and which prohibit the information, "one year warranty." Berg Agency does not contest the validity of those ordinance provisions of South Orange and West Orange which regulate the size limitations, duration and set-back requirements of the signs.
Each defendant denies the claim of unconstitutionality and also challenges the standing of plaintiff Berg Agency to bring suit.
As alleged by each defendant, the purpose of these pertinent sections of each town's ordinance, as interpreted and applied, is to preserve the aesthetic appearance of the towns and to maintain the value of residential properties.

Standing
Defendants initially contest the standing of plaintiff Berg Agency to allege a First Amendment violation in regard to the ordinances in question. It should be pointed out, in regard to standing, that the First Amendment protects both the disseminators and recipients of protected information. Coleman v. Newark Morning Ledger Co., 29 N.J. 357 (1959); Schaad v. Ocean Grove Camp Meeting Ass'n, 72 N.J. 237 (1977). Thus, the fact that Berg, in attempting to place a "for sale" sign on residential property, falls into the category of a disseminator of information, does not deprive it of standing if other criteria are met. Such criteria were set forth in Crescent Pk. Tenants Ass'n v. Realty Corp. of N.Y., 58 N.J. 98 (1971).
In the case at bar the alleged deprivation of Berg's First Amendment rights by defendants' prohibition or regulation of the use of "for sale" signs is not merely hypothetical. It is uncontroverted by defendants that Berg is a member of the Board of Realtors of the Oranges and Maplewood. The Board of Realtors' membership specifically includes realtors who operate in defendant municipalities. Furthermore, the evidence reveals that Berg has residential *550 property listings in all three defendant towns. It is apparent from the evidence submitted that defendants have enforced, as in the case of Maplewood, or have every intention of enforcing their respective ordinances regulating real estate signs. Thus, it is clear that but for the ordinances enacted by each defendant, plaintiff Berg would erect its "for sale" sign on at least some of the properties listed with it in each defendant town. When these facts are viewed in light of the case of Crescent Pk. Tenants Ass'n v. Realty Eq. Corp. of N.Y., supra, the alleged deprivation of First Amendment rights of Berg Agency is seen to be sufficiently concrete to establish standing. See also, Walker v. Stanhope, 23 N.J. 657 (1957); Dome Realty Inc. v. Patterson, 150 N.J. Super. 448 (App. Div. 1977).

For Sale Signs
Turning to the First Amendment issue, defendants first contend that the ordinance provisions, on their face, as in the case of Maplewood, or as applied, as in the cases of South Orange and West Orange, should be upheld as reasonable "time, place and manner" restrictions on First Amendment rights. Defendants base this contention on the supposition that there are many viable alternative modes of communicating to potential purchasers the information that a house is for sale or sold, the realtor's name and the one-year warranty, other than by the use of a "for sale" sign. A similar argument was made unsuccessfully by the defendant in the recent case of Linmark Assoc., Inc. v. Willingboro Tp., 431 U.S. 85, 97 S.Ct. 1614, 50 L.Ed.2d 307 (1977).
Linmark is a case factually similar to the case at bar. In Linmark a township ordinance was enacted to halt what was perceived to be the flight of white homeowners from a racially integrated community. Defendant township in Linmark contended that its prohibition of real estate "for sale" and "sold" signs constituted a reasonable time, place and *551 manner restriction on free expression, since there were many viable alternative modes of communicating to potential purchasers that a house is for sale. The court rejected this argument for two reasons. First, the court felt that serious questions exist as to whether the ordinance leaves open ample alternative channels of communication:
Although in theory sellers remain free to employ a number of different alternatives, in practice, realty is not marketed through leaflets, sound tracks, demonstrations or the like. The options to which sellers realistically are relegated  primarily newspaper advertising and listing with real estate agents  involve more cost and less autonomy than "for sale" signs [citations omitted] are less likely to reach persons not deliberately seeking sales information [citations omitted] and may be less effective media for communicating the message that is conveyed by a "for sale" sign in front of the house to be sold. The alternatives, then, are far from satisfactory.
Secondly, the court found that the ordinance in Linmark did not qualify as a reasonable time, place and manner restriction because it, in effect, regulated not the place or manner of speech, but specifically the content of speech, singling out for prohibition signs with the information "for sale." (At 94, 97 S.Ct. 1614)
In the case at bar the Maplewood ordinance prohibits all "for sale" or "sold" signs on single-family, residential dwellings and is, thus, somewhat analogous to the ordinance in Linmark. It follows, therefore, that the reasons given in Linmark for holding that the ordinance does not qualify as a time, place and manner restriction on freedom of speech are applicable to defendant Maplewood's ordinance. As held in Linmark, Maplewood's ordinance provides no viable alternative for disseminating the "for sale" information to potential buyers not deliberately seeking sales information. Additionally, Maplewood's ordinance goes beyond a regulation of time and place to a regulation of the content of the sign, i.e., specifically prohibiting the language "for sale."
*552 It is apparent also on the basis of Linmark that the ordinances of West Orange and South Orange do not qualify as reasonable time, place and manner restrictions on freedom of speech, at least in regard to the prohibitions of the realtor's name, logo and the warranty information. While it is true that there are aspects of these ordinances which are time, place and manner restrictions, i.e., the size limitation of the sign, the set-back requirement and provisions as to the limitation of duration of the display, there are also aspects to these ordinances which regulate the content of expression, such as the prohibition as to the realtor's name, the language, "one year warranty" and "sold" (South Orange only). Additionally, by analogy to Linmark, there is no viable means of communicating the realtor's name and "one year warranty" other than a sign, for those potential buyers who are not deliberately seeking sales information. Linmark, supra at 93, 97 S.Ct. 1614; Va. State Bd. of Pharmacy v. Va. Cit. Consumer Council, 425 U.S. 748, 771, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976).
In the alternative, defendants argue that the ordinance sections in issue can survive constitutional attack on the basis that the regulation of particular content (South Orange and West Orange) or the total prohibition of such signs (Maplewood) can be justified when the governmental purpose is the promotion of aesthetics and the preservation of property values.
Although not done with the frequency of regulation of speech on the basis of time, place and manner restrictions, the court upon occasion has sanctioned the regulation of speech based on content. In so doing, the court must first find that the First Amendment right to free speech and free flow of information is outweighed by the significant government interest in suppressing the content of the communication. Tinker v. Desmoines Indep. Com. Sch. Dist., 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); *553 Shelton v. Tucker, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1969).
It must be emphasized at the outset, however, that speech is not stripped of First Amendment protection merely because it appears in the form of commercial advertising. Bates v. State Bar of Arizona, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977); Linmark Assoc. Inc. v. Willingboro, supra; Va. St. Bd. of Pharmacy v. Va. Cit. Consumer Council, supra.; Bigelow v. Virginia, 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975).
In Va. St. Bd. of Pharmacy, a case dealing with the constitutional permissibility of advertising prescription drug prices, the court went far in defining the extent that commercial speech is afforded constitutional protection stating,
Advertising, however tasteless and excessive, it sometimes may seem is nonetheless dissemination of information as to who is producing and selling what product, for what reason, and at what price. So long as we preserve a predominantly free enterprise economy the allocation of our resources in large measure will be made through numerous private economic decisions. It is a matter of public interest that those decisions in the aggregate be intelligent and well informed. To this end, the free flow of commercial information is indispensable. Va. State Bd. of Pharmacy, supra 425 U.S. at 765, 96 S.Ct. at 1827.
The U.S. Supreme Court in Linmark Assoc. v. Willingboro, supra 431 U.S. at 92, 97 S.Ct. 1614, has already emphasized that the First Amendment interest of purchasers and sellers in communicating that a house is up for sale is no less than the First Amendment interest in communicating prescription drug prices (citing Va. State Bd. of Pharm. v. Va. Cit. Consumer Council, supra), or in communicating abortion information (citing Virginia v. Bigelow, supra). Additionally, the court in Linmark, supra 431 U.S. at 93, 97 S.Ct. 1614 has stressed the unique value of the information imparted by a "for sale" sign, specifically, that such a sign is the most effective means of reaching *554 potential buyers who are not deliberately seeking sales information. Given the value of the information "for sale" on such a sign, defendants West Orange and South Orange would argue that the information containing the realtor's name, one-year warranty and the word "sold" have no such similar value.
In evaluating the degree of First Amendment protection to be afforded the above information, the court must look at the information in dispute (i.e., realtor's name, one-year warranty and "sold"), and determine if the dissemination of this information aids the recipient of such information in making an intelligent and informed decision about pursuing the purchase of the property upon which the sign sits. Va. State Bd. of Pharm., supra 425 U.S. at 765, 96 S.Ct. 1817. The court first finds the realtor's name to be valuable information for several reasons. As the ordinances of West Orange and South Orange now read, only the realtor's telephone number is allowed on the real estate sign. Given the fact that we are dealing with a potential class of buyers who are not deliberately seeking sales information, a telephone number does not have the same impact as a name. Thus, whereas potential buyers driving past a house for sale may easily forget a telephone number or not have the means to write it down, they are less likely to forget a name of the realtor, clearly visible and distinguishable from the rest of the sign. Furthermore, the addition of the realtor's name may facilitate the making of an intelligent decision on the part of potential buyers as to pursuing a sales agreement, in that the realtor's name and the accompanying logo may have a "good will" effect on potential buyers if they have had favorable dealings with the realtor on a prior occasion. Conversely, the addition of the realtor's name on the "for sale" sign may dissuade potential buyers from pursuing a sales agreement if they have found the particular realtor disreputable in the past.
Similarly, the language "one-year warranty" is valuable information. That the broker warrants the major systems *555 of the premises for one year after purchase certainly augments the salability of the house. Given the fact that we are dealing with a class of buyers not deliberately seeking such information, the addition of the warranty information on a real estate sign can thus arouse the interest of potential buyers to make further inquiry.
Given the relative values to potential buyers of the contested information to be placed on real estate signs, the question then becomes whether there is a significant governmental interest which outweighs the First Amendment right to the free flow of information and would thus sanction the prohibition in toto of real estate signs, as in the case of Maplewood, or the prohibition of particular information on these signs, as in the case of West Orange and South Orange. Defendants contend that the governmental interest in the promotion of aesthetics and the preservation of property values is sufficiently significant to outweigh the First Amendment right of free access to the information contained in the real estate sign.
Defendants have in actuality made two arguments with respect to the preservation of property values. First, they contend that the unregulated use of real estate signs will cause such a proliferation of signs as to have a negative impact on the environment, thus causing a reduction of property values. Second, defendants contend that apart from aesthetic considerations, the unregulated use of real estate signs would cause such a proliferation of signs in the community as to make potential buyers more aware that there are many houses on the selling market, thus making the real estate market less desirable for sellers vis-a-vis buyers.
Evaluating this latter argument, first, the court finds that a zoning ordinance which has as its purpose the preservation of property values, not by the promotion of aesthetics but rather by the deliberate restricting of certain information to buyers, is constitutionally impermissible, of the kind struck down in Linmark v. Willingboro, supra. One of the fundamental problems with the ordinance in Linmark *556 was that in prohibiting real estate signs the legislature presumed that free access to the information contained in such sign would cause members of the community to act in a way detrimental to the community, i.e., would cause a rash of panic selling and departure of whites from the neighborhood. The court in striking down the ordinance as invidious to the First Amendment stated that a legislature cannot restrict the free flow of information based on the presumption that recipients of such information will act wrongly or nonintelligently with respect to it. In the case at bar the decision to place a real estate sign on residential property, absent a prohibitive ordinance, is left to the homeowner. In making such a decision the court must presume that the seller has intelligently weighed the advantages of dissemination of such information against the possible detrimental effect such information might have on market conditions. As the essence of the First Amendment protects the dissemination and interchange of information, it is not for the legislature or the courts to prohibit or restrict such dissemination on the grounds that the legislature knows better than the seller of property what is good for him. Linmark v. Willingboro, supra 431 U.S. at 96, 97, 97 S.Ct. 1614.
Turning next to a discussion of the significance of the governmental interest in the promotion of aesthetics, the court is aware of the ample body of law demonstrating that aesthetic considerations are a significant government interest which can thus be a legitimate factor to consider in drafting zoning regulations. Napierkowski v. Gloucester Tp., 29 N.J. 481 (1959); United Advertising Corp. v. Metuchen, 42 N.J. 1 (1964). However, in the great majority of these cases aesthetic considerations are considered intertwined with the preservation of property values. Thus, in United Advertising Corp., supra, a case concerned with the validity of an ordinance prohibiting billboards, the court stated that "the aesthetic impact of billboards is an economic fact *557 which may bear heavily upon the enjoyment and value of property. It is a relevant zoning consideration."
Defendants contend, however, that the case law and statutes of New Jersey permit zoning solely on the basis of aesthetic considerations, and therefore the validity of such legislation does not depend on its efficacy in preserving property values while it promotes aesthetics. The court is cognizant of the recently enacted Municipal Land Use Law, specifically N.J.S.A. 40:55D-2(i), which may indicate a legislative intent to authorize the drafting of zoning legislation solely on the basis of aesthetic considerations. Additionally, the court is aware of the case of Westfield Motor Sales Co. v. Westfield, 129 N.J. Super. 528 (Law Div. 1974), in which an ordinance limiting the size of signs to be erected in the Town of Westfield was upheld solely on the basis of aesthetics. It is not now necessary for the court to decide whether zoning legislation drafted to promote aesthetics must as well have the effect of preserving property values. Suffice it to say that if such legislation in fact preserves property values as it promotes aesthetics, this fact may be considered in weighing the significance of the legislation against the First Amendment infringement.
In the case at bar the court is not convinced that the use of real estate signs containing the information presently prohibited by the South Orange and West Orange ordinances will have a detrimental effect on property values by the unaesthetic appearance they create. Although the real estate brokers, called as defendants' expert witnesses, were of the opinion that such signs were aesthetically displeasing and would, therefore, have a detrimental effect on property values, no objective evidence was submitted to corroborate such opinion, as, for example, the instability of property values in other communities that do not have restrictive sign ordinances. See Farrell v. Teaneck Tp., 126 N.J. Super. 460, 462 (Law Div. 1974), in which the court in striking down an ordinance which prohibited political signs in order to preserve aesthetic values rejected the argument *558 that such signs, being aesthetically displeasing, would cause a decline in property values.
In the absence of objective evidence indicating an effect on property values caused by unaesthetic appearance of real estate signs, the court must examine the sufficiency of aesthetic considerations alone in determining the validity of the subject ordinances. In analyzing the sufficiency of aesthetic considerations alone, it must be kept in mind that although a governmental purpose be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle the free flow of necessary truthful information when the legitimate end can be more narrowly achieved. Shelton v. Tucker, supra 364 U.S. at 485, 81 S.Ct. 733; Va. Bd. of Pharm., supra. See also, Schoen v. Hillside Tp., 155 N.J. Super. 286 (Law. Div. 1977).
The court recognizes the legitimacy of zoning for aesthetic purposes; however, it feels that the set-back, size and time limitations present in the South Orange and West Orange ordinances, the validity of which are not subject to dispute, go far to nullify the possible negative environmental impact of the "for sale" sign. The court finds the total prohibition of real estate signs in the Maplewood ordinance, and the interpretation of the South Orange and West Orange ordinances which prohibit the name of the realtor and the warranty information, to be unduly restrictive of First Amendment rights. The pertinent New Jersey case law is supportive of such a holding. Thus, in Farrell v. Teaneck Tp., 126 N.J. Super. 460 (Law Div. 1974), an ordinance prohibiting political signs on residential properties, based on aesthetic considerations, was struck down as being unduly violative of First Amendment rights. See also, State v. Miller, 162 N.J. Super. 333 (App. Div. 1978). Similarly, in Westfield Motor Sales v. Westfield, 129 N.J. Super. 528, 544 (1974), the court upheld an ordinance regulating the size of the sign but not the content. The court indicated that the holding would be different if, in fact, the ordinance infringed on the right of the businessman to advertise.
*559 Thus, the court finds the Maplewood ordinance unconstitutional on its face and the South Orange and West Orange ordinances unconstitutional as applied insofar as these ordinances prohibit the placement of the realtor's name, logo and the warranty information on the real estate sign.
At trial, it was urged by counsel for defendants that once a house is sold, the simple removal and subsequent absence of the "for sale" sign effectively communicates that information as does a "sold" sign, and accordingly, the zoning prohibition of such a sign should qualify as a reasonable time, place and manner provision. At trial it was elicited from both plaintiffs' and defendants' expert witnesses that such a sign has tenuous value to the homeowner upon whose property the sign is placed; its real purpose is as a commercial advertising device to enhance the broker's reputation. The court is satisfied that prohibiting "sold" signs is a proper zoning exercise to prevent commercial advertising in residential areas since the value of such information is outweighed by the significant government interest in the promotion of aesthetics. See United Advertising Corp. v. Metuchen, 42 N.J. 1 (1964); Young v. American Mini Theatres, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976).