STATE OF HAWAII, Plaintiff-Appellant, *v.* FLOYD BLOSS, Defendant-Appellee

NO. 7440

CRIMINAL NO. 52666

DECEMBER 17, 1981

RICHARDSON, C.J., OGATA, MENOR, LUM AND NAKAMURA, JJ.

## OPINION OF THE COURT BY OGATA, J.

The State of Hawaii (hereinafter State) appeals an order and a written decision of the First Circuit Court which declared Section 26-6.2(b)(7), Revised Ordinances of Honolulu (hereinafter R.O.H.) as amended,[1] unconstitutional as being violative of the guarantee of free speech, and being void for vagueness in violation of due process of law. For the reasons set forth below, we affirm in part and reverse in part the decision of the circuit court.

Section 26-6.2, R.O.H., regulates peddling on streets, sidewalks and malls, and in other public places. That ordinance as amended by Ordinance 4302 (italicized material), provides in pertinent part:[2]

(b) Notwithstanding any ordinance to the contrary, it shall be unlawful for any person to sell or offer for sale, *solicit orders for, or invite attention to or promote in any manner whatsoever, directly or indirectly,* goods, wares, merchandise, food stuffs, refreshments or other kinds of property or services, *or to distribute commercial handbills, or to carry on or conduct any commercial promotional scheme, advertising program or similar activity* in the following areas:

(7) Waikiki peninsula — upon the public streets, alleys, sidewalks, malls, parks, beaches or other public places in Waikiki commencing at the entrance to the Ala Wai Canal to Kapahulu Avenue thence along the diamond head property line of Kapahulu Avenue to the ocean, thence along the ocean back to the entrance of the Ala Wai Canal.

*The provisions of this subsection shall not apply to the sale or offer for sale of daily newspapers of general circulation and to duly authorized concessions in public places.*

Violation of the ordinance could result in imprisonment for not more than one year, a fine of not more than $1,000 or both. Section 26-6.3, R.O.H.

On February 1, 1979, defendant-appellee, Floyd Bloss (hereinafter appellee), was arrested for violating Section 26-6.2(b)(7),

---

[1] Section 26-6.2(b), R.O.H., was amended by Ordinance No. 3609 and Ordinance No. 4302.

[2] While appellee only challenged subsection (b)(7) of the ordinance, its restrictions also apply to the Pali Lookout, Makapuu Lookout, Diamond Head Road, Tantalus Drive, Waimea Bay, Laie Point and Fort Street and Union Malls.

R.O.H. Specifically, appellee had "Gun Club of Hawaii" handbills in pockets affixed to the outer body of a Volkswagen van which was legally parked in a metered stall on Royal Hawaiian Avenue in Waikiki. These handbills advertised in Japanese, appellee's shooting gallery where customers could shoot live .22 caliber firearms at targets. The handbills were available for passersby to remove and dispose of them accordingly.

On February 22, 1979, and March 5, 1979, appellee appeared in the District Court of the First Circuit, and upon his demand for a jury trial, the cause was committed to the First Circuit Court. On March 30, 1979, appellee was arraigned on the amended charge of attempted prohibited peddling.[3]

Then on April 5, 1979, appellee filed a motion to declare Section 26-6.2(b)(7), R.O.H., unconstitutional on its face. After a hearing on this motion, on May 10, 1979, the First Circuit Court issued an order and a written decision declaring Section 26-6.2(b)(7), R.O.H., unconstitutional on its face as being violative of the First Amendment guarantee of free speech and of due process of law.[4] The trial court found that: appellee could properly challenge the constitutionality of the ordinance; that commercial speech is protected under the First Amendment but can be regulated where other forms of speech could not; that the ordinance was not a constitutionally permissible regulation of commercial speech; and that the ordinance was vague and ambiguous. On May 31, 1979, the State filed a

---

[3] The amended charge read:

On or about the 1st day of February, 1979, in the City and County of Honolulu, State of Hawaii, FLOYD BLOSS did attempt to distribute commercial handbills, upon a public street within the Waikiki peninsula, by parking a Volkswagen van, State of Hawaii License No. 6E-7356, with commercial handbills displayed for distribution on Royal Hawaiian Avenue, an act which constitutes a substantial step in a course of conduct intended to culminate in the commission of the offense of Prohibited Peddling in violation of Section 705-500 of the Hawaii Revised Statutes and Section 26-6.2(b)(7) of the Revised Ordinances of the City and County of Honolulu, 1969, as amended by Ordinances 3609 and 4302.

---

[4] The free speech guarantee is under the First Amendment to the United States Constitution, and Article I, Section 4 of the Hawaii State Constitution. The protections afforded by the due process clause are under the Fourteenth Amendment to the United States Constitution, and Article I, Section 5 of the Hawaii State Constitution.

motion for reconsideration which was denied by the circuit court on June 13, 1979.[5] The State now appeals.

## I.

The State asserts that appellee did not have standing to challenge the constitutional validity of Section 26-6.2(b)(7), R.O.H., relying on cases holding that the overbreadth doctrine[6] is inapplicable to commercial speech. *Bates v. State Bar of Arizona*, 433 U.S. 350, 380-81 (1977); *Ohralik v. Ohio State Bar Ass'n* 436 U.S. 447, 462-63 n.20 (1978). These cases reason that the overbreadth doctrine does not apply to commercial speech because such speech is not susceptible to being crushed by overbroad regulation. *Bates v. State Bar of Arizona, supra.*

The trial court found it unnecessary to resort to exceptions to the rules of standing. The trial court based its decision on the specific conduct of appellee under the instant ordinance, not how this ordinance applied to others.

Where restraints imposed act directly on an individual or entity and a claim of specific present objective harm is presented, standing to challenge the constitutionality of an ordinance or statute exists. *Bigelow v. Virginia*, 421 U.S. 809 (1975); *Central Hudson Gas v. Public*

---

[5] This Court will not consider matters outside the record for purposes of appellate review unless the parties comply with H.R.C.P. Rule 75(c). City & County v. Toyama, 61 Haw. 156, 158, 598 P.2d 168, 170-71, n.1 (1979); Pickering v. State, 57 Haw. 405, 409, 557 P.2d 125, 128 (1976); Orso v. City & County, 55 Haw. 37, 38-39, 514 P.2d 859, 860 (1973). Accordingly, we disregard the Corporation Counsel's letter of June 2, 1981, and the attached affidavit of Barbara Mills.

[6] Traditionally, a party does not have standing to challenge an ordinance or statute on the ground that it may be applied unconstitutionally to others not before the court. Broadrick v. Oklahoma, 413 U.S. 601 (1973); Bigelow v. Virginia, 421 U.S. 809 (1975). However, in the First Amendment area, the overbreadth doctrine developed as an exception to the above-stated rule and permits a party whose own rights are not violated to challenge the constitutionality of an ordinance upon a showing that it abridges protected speech of persons not before the court. Bigelow v. Virginia, *supra;* State v. Kaneakua, 61 Haw. 136, 597 P.2d 590 (1979); State v. Manzo, 58 Haw. 440, 573 P.2d 945 (1977). This exception developed because courts recognized that "the possible harm to society from allowing unprotected speech to go unpunished is outweighed by the possibility that protected speech will be muted." Bates v. State Bar of Arizona, 433 U.S. 350, 380 (1977).

*Service Comm'n,* 447 U.S. 557 (1980). We further note that the touch-stone to the question of standing remains "the needs of justice." *Life of the Land v. Land Use Comm'n,* 63 Haw. 166, 623 P.2d 431 (1981).

For example, in *Bigelow v. Virginia, supra,* the trial court rejected Bigelow's assertion that the statute for which he was convicted was overbroad and unconstitutional as applied to him. The United States Supreme Court held that Bigelow, a newspaper editor, had standing to challenge the constitutionality of the Virginia statute which prohibited him from selling or circulating any publication encouraging or promoting abortions. The court stated:

> There must be a "claim of specific present objective harm or a threat of specific future harm." That requirement, however, surely is met under the circumstances of this case, where the threat of prosecution already has blossomed into the reality of a conviction, and where there can be no doubt concerning the appellant's personal stake in the outcome of the controversy. The injury of which appellant complains is one to him as an editor and publisher of a newspaper, he is not seeking to raise the hypo-thetical rights of others. . . . The facts of this case well illustrate "the statute's potential for sweeping and improper application." [Citations omitted.]

421 U.S. at 816-17.

Likewise in *Central Hudson Gas v. Public Service Comm'n, supra,* the Supreme Court permitted Central Hudson to challenge the constitutionality of restraints placed upon their advertising, which promoted the use of electricity, by the Commission. The court observed: "In this case, the Commission's prohibition acts directly against the promotional activities of Central Hudson, and to the extent the limitations are unnecessary to serve the State's interests, they are invalid." *Id.* at 565, n.8.

In the instant case, we find that appellee has standing to chal-lenge the constitutionality of the ordinance. Although the ordinance conceivably affects others, the interests of hypothetical third parties are not involved, thus the overbreadth doctrine is inapplicable. It is appellee's rights which were violated by the prohibitions of the ordinance. Appellee has shown a claim of specific present objective harm and a personal stake in the outcome. Thus justice is served and the trial court properly found that appellee had standing.

## II.

The State contends that the trial court erred in declaring the instant ordinance violative of the free speech guarantee of the First Amendment of the United States Constitution, and Article I, Section 4 of the Hawaii State Constitution. However, we first must examine whether the instant form of expression is commercial speech. If found to be commercial speech, we then consider whether such speech is entitled to constitutional protection.

### A.

A precise definition of what is commercial speech has not been well developed in the case law. *See,* Comment, "First Amendment Protection for Commercial Advertising: The New Constitutional Doctrine," 44 U. Chi. L.Rev. 205 (1976). Recent cases have attempted to more clearly define the scope and parameters of commercial speech.[7] In *Virginia Pharmacy Bd. v. Virginia Consumer Council,* 425 U.S. 748, 762 (1976), the Supreme Court held that commercial speech includes speech which proposes no more than a commercial transaction. Then, in *Central Hudson Gas v. Public Service Comm'n, supra,* at 561, the court stated that commercial speech is "expression related solely to the economic interests of the speaker and its audience." *See Friedman v. Rogers,* 440 U.S. 1, 11 (1979); *Bates v. State Bar of Arizona, supra,* at 363-64; *Virginia Pharmacy Bd. v. Virginia Consumer Council, supra,* at 762. However, these broad definitions clearly do not encompass all forms of promotional adver-

---

[7] The Supreme Court has consistently failed to define commercial speech precisely, but the following are examples of protected commercial speech. *See, e.g.,* Central Hudson Gas v. Public Service Comm'n, *supra* (promotional advertising on the use of electricity); Consolidated Edison v. Public Service Comm'n, 447 U.S. 530 (1980) (inserts on public issues into monthly bills); Linmark Associates Inc. v. Willingboro, 431 U.S. 85 (1977) (posting of "For Sale" & "Sold" signs); Bates v. State Bar of Arizona, *supra* (newspaper advertisement of legal services); Virginia Pharmacy Bd. v. Virginia Consumer Council, *supra* (advertisement of prescription drug prices); Bigelow v. Virginia, *supra* (newspaper advertisement on abortion assistance); Koffler v. Joint Bar Ass'n, 51 N.Y.2d 140, 412 N.E.2d 927, 432 N.Y.S.2d 872 (1980) (direct mail solicitation); People v. Mobil Oil Corp., 48 N.Y.2d 192, 397 N.E.2d 724, 422 N.Y.S.2d 33 (1979) (posting of signs); Welton v. City of Los Angeles, 18 Cal. 3d 497, 556 P.2d 1119, 134 Cal. Rptr. 668 (1978) (vending-sale of street maps).

tising. For as we will discuss *infra,* commercial speech is accorded less constitutional protections and can be regulated where other forms of speech could not. *Young v. American Mini Theater,* 427 U.S. 50 (1976).

The cornerstone of what constitutes commercial speech is the dissemination of information. As the Supreme Court noted in *Virginia Pharmacy Bd. v. Virginia Consumer Council, supra,* at 765:

> Advertising, however tasteless and excessive it sometimes may seem, is nonetheless dissemination of information as to who is producing what product, for what reason, and at what price.

Therefore, so long as speech, in whatever form of expression, disseminates information of a commercial nature, such is commercial speech. In his concurring opinion in *Central Hudson Gas v. Public Service Comm'n, supra,* Justice Stevens described the kinds of expression considered to be commercial speech:

> A salesman's solicitation, a broker's offer, and a manufacturer's publication of a price list or the terms of his standard warranty would unquestionably fit within this concept. Presumably, the definition is intended to encompass advertising that advises possible buyers of the availability of specific products at specific prices and describes the advantages of purchasing such items. Perhaps it also extends to other communications that do little more than make the name of a product or service more familiar to the general public.

447 U.S. at 580 (Stevens, J., concurring in judgment). We find this to be a workable starting definition of commercial speech.

The parties in this appeal agree that the material contained in the handbill in question was commercial speech. Although the record does not include the handbill involved, its substance was an advertisement of appellee's shooting gallery. This communication makes the name of a service more familiar to the public. Thus, we find that the instant handbill constitutes commercial speech.

### B.

We now turn to and consider whether commercial speech should be afforded constitutional protection.

Constitutional protection for commercial speech is a recent development of constitutional jurisprudence. Initially, commercial

speech was not afforded the protections of the First Amendment. In *Valentine v. Chrestensen,* 316 U.S. 52 (1942), the United States Supreme Court upheld the constitutionality of a municipal ordinance that prohibited the distribution of commercial handbills. However the validity of the *Valentine* doctrine was put into doubt by subsequent court decisions. *See, Bigelow v. Virginia, supra; Pittsburgh Press Co. v. Human Relations Comm'n,* 413 U.S. 376 (1973).

In *Virginia Pharmacy Bd. v. Virginia Consumer Council, supra,* the United States Supreme Court held that speech which proposes no more than a commercial transaction enjoys the protections of the First Amendment. As the court stated:

> It is clear, for example, that speech does not lose its First Amendment protection because money is spent to project it, as in a paid advertisement of one form or another. Speech likewise is protected even though it is carried in a form that is "sold" for profit, and even though it may involve a solicitation to purchase or otherwise pay or contribute money. [Citations omitted.]

425 U.S. at 761. Thus, the Virginia statute which prohibited the advertisement of prescription drug prices was found unconstitutional.

Subsequent decisions of the Supreme Court have attempted to clarify and develop the commercial speech doctrine. In *Bates v. State Bar of Arizona, supra,* the court held that truthful advertisement concerning the availability and terms of routine legal services was protected by the First Amendment. However, *Ohralik v. Ohio State Bar Association, supra,* held that in-person solicitation was not protected commercial speech under the First Amendment. In *Linmark Associates Inc. v. Willingboro, supra,* the court struck down an ordinance which prohibited the posting of real estate "For Sale" signs. The court found that the ordinance was not a reasonable regulation of a First Amendment right. Then in *Friedman v. Rogers, supra,* the court held that trade names which are a form of commercial speech are not protected by the First Amendment since such speech had no intrinsic meaning concerning price information or the nature of services offered. More recently, in *Central Hudson Gas v. Public Service Comm'n, supra,* the Supreme Court held that a regulation of the New York Public Service Commission which completely prohibited an electric utility from advertising to promote the use of electricity violated the First Amendment. Finally, last term, the court in *Metro-*

*media Inc. v. San Diego*, 453 U.S. 490 (1981) (plurality op.), held that a San Diego ordinance which prohibited commercial advertising on billboards was a permissible regulation of commercial speech. However, in that same case, the city's ban on signs carrying noncommercial advertising was found to be invalid.

Other jurisdictions have held that commercial speech is protected by the First Amendment. *Welton v. City of Los Angeles*, 18 Cal. 3d 497, 556 P.2d 1119, 134 Cal. Rptr. 668 (1978); *Veterans of Foreign Wars v. City of Steamboat Springs*, 195 Colo. 44, 575 P.2d 835 (1978); *Equifax Services Inc. v. Cohen*, 420 A.2d 189 (Me. 1980); *Comprehensive Accounting Service v. Maryland State Bd.*, 284 Md. 474, 397 A.2d 1019 (1979); *Berg Agency v. Township of Maplewood*, 163 N.J. Super. 542, 395 A.2d 261 (1978); *Stuckey's Stores Inc. v. O'Cheskey*, 93 N.M. 312, 600 P.2d 258 (1979); *Koffler v. Joint Bar Ass'n.*, 51 N.Y.2d 140, 412 N.E.2d 927, 432 N.Y.S.2d 872 (1980); *People v. Mobil Oil Corp.*, 48 N.Y.2d 192, 397 N.E.2d 724, 422 N.Y.S.2d 33 (1979); *People v. Remeny*, 40 N.Y.2d 527, 355 N.E.2d 375, 387 N.Y.S.2d 415 (1976); *Adler, Barish, Daniels, Levin, & Creskoff v. Epstein*, 482 Pa. 416, 393 A.2d 1175 (1978); *H & L Messengers Inc. v. City of Brentwood*, 577 S.W.2d 444 (Tenn. 1979).

The constitutional protections afforded commercial speech are justified under three different rationales. First, the speaker's interest, although purely economic, is not disqualified from protection of the First Amendment. *Bates v. State Bar of Arizona, supra*, at 364; *Virginia Pharmacy Bd. v. Virginia Consumer Council, supra*, at 762. Second, the consumer is more concerned with the free flow of commercial information because it is useful in determining where scarce dollars are best spent. *Id.* at 763-64. Third, society benefits from the constitutional protection afforded commercial speech because such speech furthers the "societal interest in the 'free flow of commercial information.' " *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 783 (1978); *Virginia Pharmacy Bd. v. Virginia Consumer Council, supra*. The Supreme Court, emphasizing this strong societal interest, in *Virginia Pharmacy* stated:

> So long as we preserve a predominantly free enterprise economy, the allocation of our resources in large measure will be made through numerous private economic decisions. *It is a matter of public interest that those decisions, in the aggregate, be intelligent and well informed. To this end, the free flow of commercial information is*

*indispensable*. And if it is indispensable to the proper allocation of resources in a free enterprise system, *it is also indispensable to the formation of intelligent opinions as to how that system ought to be regulated or altered*. Therefore, even if the First Amendment were thought to be primarily an instrument to enlighten public decisionmaking in a democracy, we could not say that the free flow of information does not serve that goal. [Citations omitted; emphasis ours.]

425 U.S. at 765.

And in *Central Hudson Gas v. Public Service Comm'n, supra,* the court reiterated its rejection of the overly paternalistic view of government to suppress or regulate commercial speech. The court stated:

[P]eople will perceive their own best interests if only they are well enough informed, and . . . the best means to that end is to open the channels of communication, rather than to close them. . . . Even when advertising communicates only an incomplete version of the relevant facts, the First Amendment presumes that some accurate information is better than no information at all.

*Id.* at 562.

However, the protections afforded by the First Amendment are not absolute. There are situations where speech may justifiably be suppressed in spite of the First Amendment.[8]

Similarly, commercial speech is not absolutely protected by the First Amendment. The protections afforded commercial speech are not commensurate with other speech. In fact, commercial speech is given lesser protection than other forms of expression. *Metromedia Inc. v. San Diego, supra; Central Hudson Gas v. Public Service Comm'n, supra,* at 562-63. The court has recognized the common-sense distinction between commercial speech and noncommercial speech, and in *Ohralik v. Ohio State Bar Ass'n, supra,* at 456, the court stated:

To require a parity of constitutional protection for commercial and noncommercial speech alike could invite dilution, simply by

---

[8] *See, e.g.,* Miller v. California, 413 U.S. 15 (1973) (obscenity); Gertz v. Robert Welch Inc., 418 U.S. 323 (1974) (libel); Chaplinsky v. New Hampshire, 315 U.S. 568 (1942) (fighting words); Brandenburg v. Ohio, 395 U.S. 444 (1969) (incitement); Friedman v. Rogers, 440 U.S. 1 (1979) (communication more likely to deceive than to inform); Ohralik v. Ohio State Bar Ass'n, *supra* (deceptive communications); Pittsburgh Press Co., v. Human Relations Comm'n, *supra* (commercial speech relating to illegal activity).

a leveling process, of the force of the Amendment's guarantee with respect to the latter kind of speech. Rather than subject the First Amendment to such a devitalization, we instead have afforded commercial speech a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values, while allowing modes of regulation that might be impermissible in the realm of noncommercial expression. [Citations and footnotes omitted.]

Thus, the lesser protection afforded to commercial speech is because such speech is more easily verifiable since the disseminator knows more about the product or service than anyone else. Moreover, there is less likelihood of commercial speech being chilled or muted by regulation since such speech is calculated to generate profits. *Central Hudson Gas v. Public Service Comm'n, supra,* at 564, n.6; *Viriginia Pharmacy Bd. v. Virginia Consumer Council, supra,* at 771-72, n.24; *Friedman v. Rogers, supra,* at 10.

Given that commercial speech is afforded lesser status than other forms of expression, "[s]ome forms of commercial speech regulation are surely permissible." *Virginia Pharmacy Bd. v. Virginia Consumer Council, supra,* at 770. The protection afforded to commercial speech depends upon balancing "the nature both of the expression and of the governmental interest served by its regulation." *Metromedia Inc. v. San Diego, supra; Central Hudson Gas v. Public Service Comm'n, supra,* at 562-63; *Virginia Pharmacy Bd. v. Virginia Consumer Council, supra,* at 766. In determining the validity of government restrictions on commercial speech, a four-part test, developed in *Central Hudson Gas v. Public Service Comm'n, supra,* must be satisfied.

At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve the interest.

447 U.S. at 566.

Applying this test to the instant case, we find that the ordinance is an invalid regulation of commercial speech.

The record does not reflect nor do the parties contend that the

instant handbill was inaccurate, misleading or related to unlawful activity. *See, Friedman v. Rogers, supra; Ohralik v. Ohio State Bar Ass'n, supra; Pittsburgh Press Co. v. Human Relations Comm'n, supra.* Thus, the commercial speech interests in advertising appellee's shooting gallery are protected by the First Amendment.

Now turning to the second part of the Central Hudson Gas test, we examine whether the governmental interests asserted are substantial. The State asserts a number of justifications in support of the ban on commercial handbilling.[9] The State's primary justification for banning commercial handbilling is that commercial handbilling and related activity creates a detrimental nuisance in Waikiki, which adversely affects our tourist industry.

Examples of substantial governmental interests include aesthetics and traffic safety, *Metromedia Inc. v. San Diego, supra;* energy conservation and fair rates, *Central Hudson Gas v. Public Service Comm'n supra;* orderly movement and control of large crowds, *Heffron v. Int'l Society for Krishna Consciousness,* 452 U.S. 640 (1981); regulating traffic and securing public safety, *Cox v. New Hampshire,* 312 U.S. 569 (1941); privacy and safety, *May v. People,* ____ Colo. ____, 636 P.2d 672 (1981). It is beyond dispute that the City Council has a substantial interest in preserving and maintaining the attractiveness of tourism, one of our State's major industries.[10]

---

[9] The other justification in support of the instant ordinance is the prevention of litter which would result from the distribution of commercial handbills. The State contends that the ordinance is in the interest of public health and safety. However, this asserted interest does not justify a total prohibition on the distribution of commercial handbills. In Schneider v. State, 308 U.S. 147 (1939), the U.S. Supreme Court rejected a similar argument asserted to justify the ordinance in that case. The court stated at p.162:

[T]he purpose to keep streets clean of good appearance is insufficient to justify an ordinance which prohibits a person rightfully on a public street from handing literature to one willing to receive it. Any burden imposed upon the city authorities in cleaning and caring for the streets as an indirect consequence of such distribution results from the constitutional protection of the freedom of speech and press.

[10] Section 26-6.2(b), R.O.H. was amended in 1974 by the City Council after a letter requesting action was submitted by Wesley Hillendahl, President of the Waikiki Improvement Association. In the letter, dated September 21, 1973, Mr. Hillendahl

Positive responses to the first two inquiries under the *Central Hudson Gas* test requires analysis of the third prong which examines whether the regulation directly advances the state interest involved. The supreme court noted that regulations that indirectly advance state interests could not be upheld. *See Bates v. State Bar of Arizona, supra; Virginia Pharmacy Bd. v. Virginia Consumer Council, supra.* But, in this instance, Section 26-6.2(b)(7), R.O.H., directly advances the state interest involved. There is a direct relationship between the ban on commercial handbilling and the State's interest in preventing detrimental nuisances, especially to tourists.

Finally, we examine whether the governmental interest asserted could be served by a more limited restriction on commercial speech. In other words, is the regulation more extensive than necessary to serve the asserted governmental interest? As the court in *Central Hudson Gas* stated:

> . . . the First Amendment mandates that speech restrictions be narrowly drawn. The regulatory technique may extend only as far as the interest it serves. The State cannot regulate speech that poses no danger to the asserted state interest, nor can it completely suppress information when narrower restrictions on expression would serve its interests as well. [Citations omitted.]

447 U.S. at 565.

When laws infringe on protected commercial speech, albeit a lesser protected liberty, such laws must still be narrowly drawn. Thus, in order to determine whether a regulation is more extensive than necessary to serve the asserted governmental interest, by necessity, such an inquiry includes an examination of whether the ordinance is a reasonable time, place and manner restriction.

Time, place and manner restrictions are permitted provided "they are justified without reference to the content of the regulated speech, that they serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." *Virginia Pharmacy Bd. v. Virginia Consumer Council,*

---

expressed concern over the "rash of solicitors using our public sidewalks and imposing upon passing pedestrians." He noted that this type of activity created a "detrimental nuisance on our public sidewalk." Hillendahl submitted a revision to the instant ordinance with hopes of eliminating this nuisance. After review by various City agencies, Ordinance 4302 was enacted and incorporated all of Mr. Hillendahl's suggestions and additionally prohibited commercial handbilling.

*supra,* at 771; *see, Heffron v. Int'l Society for Krishna Consciousness, supra; Schad v. Borough of Mount Emphraim,* 452 U.S. 61 (1981); *Consolidated Edison Co. v. Public Service Comm'n,* 447 U.S. 530 (1980); *Carey v. Brown,* 447 U.S. 455 (1980). The instant ordinance is deficient in several respects.

First, by its terms, the ordinance prohibits commercial speech at all time and in any manner in Waikiki. As such, the ordinance cannot be considered a proper regulation as to time or manner.

Second, a place regulation is valid if the manner of expression is basically incompatible with the normal activity of a particular place at a particular time. *Schad v. Borough of Mount Emphraim, supra; Grayned v. City of Rockford,* 408 U.S. 104, 116 (1972). The trial court found that since Waikiki has a high concentration of retail commercial activity, the commercial speech involved here is not incompatible with the activities of this district. There is nothing in this record showing the incompatibility of commercial handbilling with activities in Waikiki. Therefore, we conclude that the ordinance is not a permissible place regulation.

In addition, time, place and manner restrictions must be content neutral, and must apply to all forms of speech. *Consolidated Edison v. Public Service Comm'n, supra,* at 536. By banning all commercial handbilling in Waikiki, the ordinance singles out speech of a particular content and seeks to prevent its dissemination completely. Thus, this regulation cannot be considered content neutral. The instant ordinance permits noncommercial forms of speech and handbilling while completely banning commercial handbilling in Waikiki.[11] *Id.* at 537; *Carey v. Brown,* 447 U.S. 455, 462 n.6 (1980); *People v. Remeny,* 40 N.Y.2d 527, 355 N.E.2d 375, 387 N.Y.S.2d 415 (1976) (Fuchsberg, J., concurring).

Additionally, the instant ordinance does not leave open ample alternative channels of communication. The State argues that appellee could advertise by way of newspapers, radio, key rings, ballpoint

---

[11] An ordinance which totally bans handbilling in public places is unconstitutional. Jamison v. Texas, 318 U.S. 413 (1943); Schneider v. State, 308 U.S. 147 (1939); Lovell v. Griffin, 303 U.S. 444 (1938). The "streets, sidewalks, parks, and other similar public places are so historically associated with the exercise of First Amendment rights that access to them for the purpose of exercising such rights cannot constitutionally be denied broadly and absolutely." Food Employees Local 590 v. Logan Valley Plaza, Inc., 391 U.S. 308, 315 (1968).

pens, in tourist publications such as "This Week" or by other promotional means.[12] In *Linmark Associates Inc v. Willingboro, supra,* the United States Supreme Court addressed a similar argument regarding the prohibition of "For Sale" signs in front of homes. The court's reasoning in rejecting that there are alternative means to indicate a house is for sale is equally applicable here. The court stated at p. 93:·

> Although in theory sellers remain free to employ a number of different alternatives, in practice realty is not marketed through leaflets, sound trucks, demonstrations, or the like. The options to which sellers realistically are relegated — primarily newspaper advertising and listing with real estate agents — involve more cost and less autonomy than "For Sale" signs; are less likely to reach persons not deliberately seeking sales information; and may be less effective media for communicating the message that is conveyed by a "For Sale" sign in front of the house to be sold. The alternatives, then, are far from satisfactory. [Citations omitted.]

These alternative forms of communication asserted by the City are far from satisfactory since they may involve greater expense and may be a less effective means for communicating messages.

Although preventing nuisances to enhance the attractiveness of tourism is important, on balance, this rationale is not sufficient to justify the total suppression of commercial speech, which disseminates information that is neither false, misleading nor related to illegal activity. In addition, the State has made no showing that a more limited regulation cannot adequately protect its asserted interests. *Central Hudson Gas v. Public Service Comm'n, supra,* at 570. Moreover, we do not see how leaving handbills pockets affixed to the outerbody of a motor vehicle, which invites interested passersby to take such handbills, creates a detrimental nuisance or poses a danger to the asserted state interest. None of the dangers associated with in-person solicitation are involved here. Therefore, we hold that Section 26-6.2(b)(7), R.O.H., impermissibly regulates protected commercial speech which violates the First Amendment of the United States Constitution, and Article I, Section 4 of the Hawaii State Constitution.

---

[12] We note that even advertisements in tourist magazines may be illegal under the ordinance since the ordinance exempts only daily newspapers of general circulation.

III.

We have consistently recognized that due process of law requires that a penal statute or ordinance state with reasonable clarity the act it proscribes and must also prescribe fixed standards for adjudging guilt when that person stands accused. *Grayned v. City of Rockford,* 408 U.S. 104 (1971); *State v. Kaneakua,* 61 Haw. 136, 597 P.2d 590 (1979); *State v. Manzo,* 58 Haw. 440, 573 P.2d 945 (1977); *State v. Grahovac,* 52 Haw. 527, 480 P.2d 148 (1971). A penal statute or ordinance must comport with the above requirements, otherwise such a statute or ordinance is void for vagueness.[13]

The rationale for the requirements of due process are three-fold. *See, Grayned v. City of Rockford, supra; State v. Manzo, supra.* First, a criminal statute must state with reasonable clarity the act it proscribes because under our system of laws, in order for a person to choose between lawful and unlawful conduct, the law must give "persons of ordinary intelligence a reasonable opportunity to know what is prohibited so that he or she may act accordingly." *State v. Kaneakua, supra,* at 138, 597 P.2d at 593. Under due process, "[n]o one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids." *Lanzetta v. New Jersey,* 306 U.S. 451, 453 (1939).

Second, prescribing fixed standards for adjudging guilt is necessary to avoid having judges, juries or police officers create their own standards. As this Court stated in *Kaneakua, supra,* at 139, 597 P.2d at 593:

> This court has also recognized that statutes which fail to provide explicit standards are subject to arbitrary application and enforcement. Vague laws impermissibly delegate policy matters to the subjective and *ad hoc* decision making of police officers on

---

[13] We have held that statutes and ordinances must comply with the two-prong standard enunciated above, otherwise such laws are void for vagueness and violate due process of law. *See, e.g.,* In Re John Doe, 54 Haw. 647, 513 P.2d 1385 (1973) (juvenile loitering curfew); State v. Bloss, 62 Haw. 147, 613 P.2d 354 (1980) (juvenile loitering); State v. Shigematsu, 52 Haw. 604, 483 P.2d 997 (1971) (barricaded place); State v. Grahovac, *supra,* (loitering); State v. Abellano, 50 Haw. 384, 441 P.2d 333 (1968) (presence at cockfight); Territory v. Anduha, 31 Haw. 459, *aff'd* 48 F.2d 171 (9th Cir. 1931) (loitering).

the beat, judges, and juries and may result in capricious or discriminatory action. [Citations omitted.]

Finally, a vague statute affects basic First Amendment freedoms where the exercise of those freedoms would be inhibited unless the boundaries of forbidden conduct are clearly marked. *State v. Manzo, supra,* at 455, 573 P.2d at 955.

We recognize that vagueness is a relative concept. Thus, when First Amendment rights are not implicated, a lesser degree of specificity in a statute is acceptable. *State v. Manzo, supra.* However, where the First Amendment is implicated, a greater degree of specificity is necessary to avoid inhibiting speech and the free dissemination of information. *Cf. Hynes v. Mayor of Oradell,* 425 U.S. 610, 620 (1976); *Buckley v. Valeo,* 424 U.S. 1, 76-77 (1976). As the court in *N.A.A.C.P. v. Button,* 371 U.S. 415, 432-33 (1963) stated:

> The objectionable quality of vagueness and overbreadth does not depend upon absence of fair notice to a criminally accused or upon unchanneled delegation of legislative powers, but upon the danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application. These freedoms are delicate and vulnerable, as well as supremely precious in our society. The threat of sanction may deter their exercise almost as potently as the actual application of sanctions. Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity. [Citations and footnote omitted.]

The State asserts that appellee's conduct clearly fell within the prohibitions of the ordinance. The ordinance specifically bans distribution of commercial handbills, and as such, the State contends that the ordinance is not vague as applied to the appellee. Although it may appear that the instant ordinance clearly prohibits appellee's conduct, a more detailed examination reveals the vagueness of the ordinance.[14]

---

[14] The other flaw of this ordinance is its vagueness, not its overbreadth. We note the similarities between the doctrines of vagueness and overbreadth. A statute may be overbroad because its vagueness extends its reach too far, and yet have sufficient specificity to avoid a challenge for facial invalidity. Conversely, a vague statute need not be overbroad. Sufficient specificity in a statute is not an assurance against vagueness. State v. Manzo, *supra.*

The ordinance attempts to be all-inclusive in its prohibition of commercial handbilling. However, the ordinance lacks the precision with which it defines the categories of "causes" it covers. *Hynes v. Mayor of Oradell, supra,* at 621, n.5.[15] It is not clear what is meant by the phrase "commercial handbills." As we discussed above, some forms of commercial speech are constitutionally protected. The ordinance does not attempt to distinguish between lawful and unlawful conduct. Does "commercial handbills" include protected and unprotected speech, or does it just mean unprotected speech?[16] Thus, given this ambiguity, a person of ordinary intelligence would be unable to determine the parameters of proper and improper conduct. *See, Connally v. General Const. Co.,* 269 U.S. 385, 391 (1926); *Lanzetta v. New Jersey, supra; State v. Kaneakua, supra.*

Moreover, the instant ordinance does not meet the second prong of the due process analysis set forth above. As in *State v. Bloss, supra,* Section 26-6.2(b)(7), R.O.H., fails to provide explicit standards for determining guilt. Thus, law enforcement officials have no guidance in determining whether conduct is lawful or not.

Therefore, we conclude that Section 26-6.2(b)(7), R.O.H., is void for vagueness and violates due process of law.

The State also contends that the ordinance should be construed in accordance with HRS § 1-15. Under that statute, ambiguous words may be given meaning from its context or from the intent of the statute. Thus, the State asserts that the ordinance should be read as a prohibition on the sale and solicitation of products in certain limited areas.

While we are mindful of this rule of construction, we cannot sustain the ordinance for the reasons set forth above. We have

---

[15] Other portions of this ordinance are also unduly vague. The ordinance does not make clear what is meant by the phrase "solicit orders for, or invite attention to or promote in any manner whatsoever, directly or indirectly." Nor does the ordinance explain what is meant by "to carry on or conduct any commercial promotional scheme, advertising program or similar activity." These phrases require a person of common intelligence to guess at the scope of the ordinance. Additionally, these provisions do not provide guidance to law enforcement officials on whether certain conduct is lawful or unlawful.

[16] Speech that is false, deceptive, misleading and relates to illegal activity is not protected. *See,* Note 8, *supra.* Commercial speech that can be regulated as provided in *Central Hudson Gas, supra,* would also be unprotected.

recognized that "[t]he judicial power to hold a legislative enactment unconstitutional should be exercised prudently and with restraint. But this does not mean that the legislature can avoid the constitutional mandate to state clearly the acts proscribed. . . ." *State v. Abellano,* 50 Haw. 384, 385, 441 P.2d 333, 334 (1968). We are aware of the concerns expressed to the City Council in Mr. Hillendahl's letter, *see,* note 10, *supra,* but that does not relieve the legislative branch of its duty to follow constitutional mandates. It is not the role of the courts to rewrite statutes or ordinances in order to cure constitutional defects. *Id.* at 386, 441 P.2d at 335. That would be an unconstitutional exercise of legislative power.

## IV.

By declaring Section 26-6.2(b), R.O.H., unconstitutional, we do not intend to leave a void in the ordinances of the City and County of Honolulu. It is the general rule that where an act purporting to amend and re-enact an existing statute is void, the original statute remains in force.[17] *Frost v. Corporation Comm'n,* 278 U.S. 515, 525-27 (1929); *Ross v. Goshi,* 351 F. Supp. 949 (D.Haw. 1972); *Stewart v. Waller,* 411 F.Supp. 206 (N.D. Miss. 1975); *see* 82 C.J.S., *Statutes* §§ 270, 247.

As our above discussion reveals, Ordinance No. 4302 amended Section 26-6.2(b), R.O.H., in 1974. It is Ordinance No. 4302 which infringed on appellee's rights to free speech and due process of law.

---

[17] Ordinance No. 4302 does not have an express savings clause. However, there is a general savings clause in Section 26-9.6, R.O.H., which reads:

> The provisions of this article are hereby declared to be severable. In accordance therewith, if any portion of said article is held invalid for any reason, the validity of any other portion of this article shall not be affected and if the application of any portion of this article to any person, property or circumstance is held invalid, the application hereof to any other person, property or circumstance shall not be affected.

We find this to be additional support that the terms of Ordinance No. 4302 which are constitutionally deficient, can be severed from the valid portions of Section 26-6.2(b), R.O.H. Moreover, the validity of Section 26-6.2(b) is not dependent on the amendment found in Ordinance No. 4302. Each section is separate and independent from one another. Thus, after excising the void portions of Section 26-6.2(b), namely Ordinance No. 4302, we find that the remainder of the law is intelligent, complete and capable of execution. Territory v. Hoy Chong, 21 Haw. 39, 43 (1912).

Thus, the provisions of Ordinance No. 4302 due to its unconstitutionality, would be void and have no effect to amend a valid prior enactment. Therefore, Section 26-6.2(b), R.O.H., prior to the 1974 amendment is hereby reinstated.[18]

### ` V.

Based on our above discussion, we find that Section 26-6.2(b)(7), R.O.H., is an impermissible regulation of protected commercial speech. The instant ordinance abridges rights protected by the First Amendment of the United States Constitution, and Article I, Section 4 of the Hawaii State Constitution.

We also find that Section 26-6.2(b)(7), R.O.H., is vague and ambiguous. Thus, the ordinance violates the due process clause of the Fourteenth Amendment of the United States Constitution, and Article I, Section 5 of the Hawaii State Constitution.

Affirmed in part, reversed in part and remanded for further proceedings not inconsistent with this opinion.

*Glenn M. Miyajima,* Deputy Prosecuting Attorney, for plaintiff-appellant.

*Evan R. Shirley (Shirley & Jordan* of counsel) for defendant-appellee.

---

[18] Prior to the 1974 amendment, Section 26-6.2(b), R.O.H., read as follows:
  Notwithstanding any ordinance to the contrary, it shall be unlawful for any person to sell or offer for sale goods, wares, merchandise, foodstuffs, refreshments or other kinds of property or services except newspapers of general circulation and by duly authorized concessions in public places, in the following areas: