*** FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER ***

**Electronically Filed
Supreme Court
SCWC-18-0000777
15-JUN-2020
08:07 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

STATE OF HAWAIʻI,
Respondent/Plaintiff-Appellee,

vs.

MOHAMMAD A. ZOWAIL,
Petitioner/Defendant-Appellant.

SCWC-18-0000777

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-18-0000777; 1DCC-17-0017396)

JUNE 15, 2020

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY RECKTENWALD, C.J.

## I.  INTRODUCTION

On November 18, 2017, Mohammad A. Zowail set up a table at the edge of the sidewalk along Kalākaua Avenue in Waikīkī to showcase his art for sale and perform a painting demonstration. As he worked, a sizeable crowd formed to watch, and some

pedestrians had to detour around the spectators.  After observing Zowail, police charged him with violating Revised Ordinances of Honolulu (ROH) § 29-5.1 (1990) for "engag[ing] in business. . . on any public sidewalk where [his] operation tend[ed] to, or [did] impede or inconvenience the public or any person[.]"[1]  The District Court of the First Circuit (district court) convicted Zowail, finding that the size of the crowd meant that his operation tended to impede or inconvenience the public.

This case requires us to determine whether "operation" in ROH § 29-5.1 encompasses bystanders who have stopped to watch a performance, but are otherwise unconnected to the business operation.  Zowail argues that the district court erred by including the spectators as part of his operation because "it would be manifestly unjust to hold Zowail penally responsible for

---

[1]     ROH § 29-5.1 provides:

>   (a)   It is unlawful for any solicitor or canvasser to engage in business on any public street, sidewalk or mall where such person's operation tends to, or does impede or inconvenience the public or any person in the lawful use of such street, sidewalk or mall.
>
>   (b)   "Solicitor or canvasser," as used in this article, means any person, traveling by foot, or any other type of conveyance, or by wagon, automobile, motor truck, taking or attempting to take orders for sale of goods, wares, merchandise or other personal property for future delivery, or for services to be furnished or performed in the future, whether or not such person carries or exhibits any samples or collects advance payments on sales.  The term shall also include any person who, for oneself or for another hires, leases, uses or occupies any building, structure, tent, room, shop, vehicle or any other place for the sole purpose of exhibiting samples and taking orders for future delivery.

the actions of other persons that were beyond his control." He further claims that if "operation" in ROH § 29-5.1(a) includes spectators, the statute would be unconstitutionally vague because the ordinance gives no guidance as to when the size of a crowd crosses the threshold to become a violation of ROH § 29-5.1. We agree.

Accordingly, we hold that "operation" in ROH § 29-5.1 means the area in which a defendant conducts their business, such as the immediate perimeter around a table for goods or a demarcated performance area. Thus, a defendant's "operation" does not include spectators over which a defendant has no control. As evidence did not show that Zowail's operation - excluding spectators - impeded or inconvenienced any person, Zowail's conviction was not supported by substantial evidence.

We also note that Zowail's charge was deficient for failure to allege mens rea: "A charge that fails to charge a requisite state of mind cannot be construed reasonably to state an offense[.]" State v. Apollonio, 130 Hawaiʻi 353, 359, 311 P.3d 676, 682 (2013) (holding oral charge defective for failure to specify mens rea for speeding offense). However, we need not vacate Zowail's conviction on this basis. Because Zowail's "operation" did not violate ROH § 29-5.1, his conviction must be reversed and a judgment of acquittal entered.

## II.  BACKGROUND

### A.    The Charge

Zowail received a "complaint and summons" form charging him with having committed the offense of "Use of Sidewalks" in violation of ROH § 29-5.1 and instructing him to appear in court.

The State formally arraigned Zowail immediately before trial commenced.  In reading the charge, the State advised Zowail using the language of ROH § 29-5.1 almost verbatim:

> On or about November 18, 2017, in the City and County of Honolulu, State of Hawaiʻi, Mohamad Ali Zowail, did unlawfully as a solicitor or canvasser engage[] in business on any public street, sidewalk or mall where such person's operation tends to or does impede or inconvenience a public [sic] or any person in the lawful use of such street, sidewalk or mall.
> "Solicitor" or "canvasser," as used in this article, means any person traveling by foot or any other type of conveyance or by wagon, automobile, motor truck, taking or attempting to take orders for the sale of goods, wares, merchandise or other personal property for future delivery, or for services to be furnished or performed in the future whether or not such person carries or exhibits any samples or collects advance payments on sales.
> The term shall also include any person for who, [sic] for oneself or for another, hires, leases, uses or occupies any building, structure, tent, room, shop, vehicle, or other place for the sole purpose of exhibiting samples and taking orders for future delivery.

When asked, Zowail affirmed that he understood the charge that was read, and he pled not guilty.  He did not object to the charge as insufficient.

### B.    Factual Background

The following testimony was adduced during the bench

trial.[2]

On November 18, 2017, around 7:00 p.m., Officer Aaron Luther and Sergeant Zane Hamrick were "working a plainclothes operation to specifically focus on peddling and other sidewalk infractions in the Waikiki district." They came across Zowail, who was the only performer on the sidewalk that night.

Officer Luther and Sergeant Hamrick observed Zowail for five or ten minutes while he was conducting an "art performance," spray painting a canvas and explaining to the crowd what he was doing. Although they did not witness any sales take place, both officers agreed that Zowail was offering his paintings for sale for $75.00 and that he told the crowd they could take paintings home in cardboard tubes to protect them.[3]

Zowail testified that he was 23 years old, in school getting a psychology degree, and hoping to work up to a Ph.D. He explained, "I just have a passion for art and this is a new generation of art. I was showing people what I do. . . . It's basically an art show done within like ten minutes, all with spray paint." He told the court that he was exercising his First Amendment right to perform on the public sidewalk.

There was no dispute over the layout of Zowail's area of operation. Zowail had a table set up on the sidewalk outside

---

[2] The Honorable Florence Nakakuni presided.

[3] Zowail disputed this testimony, testifying that he was not selling his paintings and that his paintings were too large to fit into the tube he was using to paint with.

the T Galleria on Kalākaua Avenue.  On the table, Officer Luther testified that Zowail had "spray paint cans and art supplies, canvases, pens and [other things] of that nature."  On the ground in front of the table, Zowail put down a black cloth so that paint did not get onto the sidewalk, and left a box for people to put money in.  Zowail testified that the table was two feet by four feet and that his display was approximately two or three feet wide in total.  As the table was set up on the street-edge of the sidewalk, facing the storefronts, there was room for pedestrians to walk past or for a crowd to gather around.  However, Zowail did not designate where the crowd could start or end.  Officer Luther and Sergeant Hamrick did not contradict Zowail's testimony about the size of his display - in fact, a photograph of the display submitted by the State corroborated Zowail's estimate of his operation's size.

The State's case that Zowail's operation inconvenienced the public hinged on the size of the crowd that formed to watch Zowail's performance, and the officers' estimate of the number of bystanders differed significantly from Zowail's account.

Zowail testified that the size of the crowd fluctuated, but he estimated there were only ten to fifteen people around him at any given time: "[P]eople make a circle around me, if you're behind ten people, you're unable to see it because the height of my waist.  So you won't be able to see if you're standing behind those ten people."  He estimated that the biggest crowd around him was twenty people.  He believed that other people on the

sidewalk were not specifically watching his performance, but passing by.

On the other hand, Officer Luther testified that there were "easily 50" people gathered, standing "[e]asily four rows" deep. However, on cross-examination Officer Luther conceded that the photographs the State entered into evidence did not show nearly that many people - for example, he counted fifteen people in Photograph 1 and fourteen people in Photograph 2. Officer Luther also agreed with defense counsel that from the photos, it looked like there was about a foot of clearance between the edge of the crowd on the sidewalk and the storefronts facing Kalākaua, including space for a woman who was walking past with a stroller.

Sergeant Hamrick estimated that the crowd included "75-plus people" and testified that there was no space on the sidewalk for anyone to walk past. On direct examination, he told the court that the crowd was "packed solid . . . [l]ike a pack of sardines. You had to walk around to get through." On cross-examination, Sergeant Hamrick testified that photographs showed significantly more people than Officer Luther had counted. For example, he testified that Photograph 1 depicted fifty people – although he counted only sixteen people, he believed that the others were standing behind them - and he similarly testified that Photograph 2 depicted thirty-five or forty people.

While Officer Luther and Sergeant Hamrick gave differing estimates of how much space was left on the sidewalk around the crowd, they both agreed that some pedestrians had to

7

step around it.  Officer Luther testified that "[t]he opening to the Galleria is a large open doorway area and several people actually had to enter into that area to get around the crowd as opposed to just going down the sidewalk."  He saw about three people with strollers and "at least one male in a wheelchair" have to go around the crowd by entering and then exiting the Galleria.  There was not enough space for a stroller or a wheelchair to go through the crowd.  Moreover, Officer Luther explained that even if there were a foot or two of space on the sidewalk, it was not enough:  "Through my personal experience, if there's a large crowd, I'm not going to barge my [way] through it, try to squeeze in tight.  Even if there was a foot or two of space, I would still feel more comfortable walking around as opposed to going through a crowd."

Officer Luther also observed that the area where Zowail was performing was more crowded than other areas in Waikīkī because people were watching the performance.  He noted that "where a lot of the other performers set up it's usually on a corner so [pedestrians] can walk around in either direction.  Where the defendant was set up was directly in front of the [T Galleria] so the only way to go is on the sidewalk.  There is no other way around."

Sergeant Hamrick similarly testified that the crowd "blocked the whole sidewalk from where Mr. Zowail was speaking all the way into the entrance of the T Galleria itself.  And then spread out on either side of the sidewalk."  He explained that

8

"there's a line in the tile that separates the private property [of the Galleria] from the City sidewalk," and some people "were going over that line and physically onto the T Gallery property and coming back onto the sidewalk after they got around the crowd."[4]  "[I]t wasn't a free-flowing pedestrian sidewalk."

After the close of evidence, the district court found Zowail guilty of violating ROH § 29-5.1.  The court found the testimony of Officer Luther and Sergeant Hamrick credible and noted that both officers agreed that a large crowd gathered to watch Zowail perform.  Further, the court found it significant that Sergeant Hamrick testified "it was not a free-flowing pedestrian sidewalk," noting "that's important anywhere but also especially in Waikiki."  While the court recognized that the size of the crowd was a "good thing from [Zowail's] point of view," ultimately it found that "the size of that crowd did tend to or did impede or inconvenience the public or any person on the day in question."

Zowail appealed his conviction to the Intermediate Court of Appeals (ICA).

## C.  ICA Proceedings

The parties' briefs before the ICA were similar to their arguments on certiorari.  Zowail contended that substantial

---

[4]     Sergeant Hamrick did not explain how he knew that the line signified the transition between public and private property.  However, Zowail did not object to his testimony.  On cross-examination, Sergeant Hamrick conceded that the "line" separating the sidewalk from T Galleria property was not visible in any of the photographs.  Sergeant Hamrick also conceded that he didn't know if people were detouring into T Galleria to avoid the crowd or to view the display inside the Galleria.

evidence did not support his conviction, and he challenged the State's proof as to each element of the offense. As relevant here, Zowail contended that the State did not prove that Zowail's "operation" impeded or inconvenienced the public: "[T]he observers who had gathered around Zowail's table were not part of his 'operation.' Indeed, it would be manifestly unjust to hold Zowail penally responsible for the actions of other persons that were beyond his control."

Zowail pointed out that he did not have seating or an area for the crowd to gather and that the gathered people were "simply interested observers." He equated his table and demonstration to a window display in a store: "[T]he store's 'operation' does not extend to [passersbys who stop to look at the display], even if they subsequently enter the store to buy a product." Thus, "[t]he court should only have considered the perimeter around Zowail's table and items in determining whether Zowail's 'operation' impeded or inconvenienced the public or a person in the use of the sidewalk." Since Zowail's table was positioned at the end of the sidewalk and there was room to walk around it, he contended that the State did not prove his business operation inconvenienced or impeded the public.

Moreover, Zowail argued that if "business" and "operation" in ROH 29-5.1 included anyone who passed by, it would be unconstitutionally vague:

> What would distinguish between a person who was
> passing by on the sidewalk and a member of the 'crowd'
> who was attributed to the business? . . . Under the

> court's interpretation any person in the area at any
> point in time, no matter how transient or momentary
> their stop was part of the 'crowd' and thereby part of
> Zowail's operation of his supposed business.

In its answering brief, the State argued "Defendant's assertion [that substantial evidence did not support his conviction] is without the support of the evidence in the record and the precedent in this jurisdiction." The State noted that the court must view the evidence in the light most favorable to the prosecution and that the district court's findings should "not be disturbed unless clearly erroneous." However, the State did not specifically address Zowail's arguments that the district court should not have considered the crowd to be part of Zowail's "business operation." Rather, the State catalogued all the instances in which Officer Luther and Sergeant Hamrick testified that Zowail was selling his paintings and that a sizeable crowd had formed to watch his performance, emphasizing that the district court found both officers to be credible.

The ICA affirmed Zowail's conviction in a summary disposition order (SDO), holding that substantial evidence supported his conviction. Notably, the ICA held that "[n]otwithstanding contrary evidence, inter alia, that at times the crowd was smaller and the public was not fully impeded in its use of the sidewalk, viewing the evidence in the light most favorable to the prosecution, we conclude that there was sufficient evidence that Zowail's operation tended to, or did, impede or inconvenience the public or any person in the lawful

11

use of a public sidewalk[.]" The ICA did not address Zowail's argument that the spectators should not be considered part of Zowail's "operation" when determining whether the operation impeded the public.

### III.  STANDARDS OF REVIEW

**A.  Statutory Interpretation**

"[T]he interpretation of a statute . . . is a question of law reviewable de novo." State v. Cabrera, 90 Hawai'i 359, 365, 978 P.2d 797, 803 (1999) (quoting State v. Arceo, 84 Hawai'i 1, 10, 928 P.2d 843, 852 (1996)).

**B.  Sufficiency of the Evidence**

> [E]vidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or jury. The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact.

State v. Richie, 88 Haw.19, 33, 960 P.2d 1227, 1241 (1998) (quoting State v. Quitog, 85 Hawai'i 128, 145, 938 P.2d 559, 576 (1997)).

"Substantial evidence" means "credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." Id. (quoting State v. Eastman, 81 Hawai'i 131, 135, 913 P.2d 57, 61 (1996)).

## IV. DISCUSSION

**A.  The Term "Operation" in ROH § 29-5.1 Means the Area in Which the Defendant Conducts Business and Does Not Include Spectators or Bystanders**

A defendant only violates ROH § 29-5.1(a) if their "operation" inconveniences any person.  Zowail argues that "operation" should not encompass every person who paused to watch his performance, but should be interpreted to include only the defendant's business area, including "the perimeter around the four feet long by two feet wide table that [Zowail] used for his performance, the donation box and the [black cloth] he used to keep paint from getting on the sidewalk."  He further asserts that if "operation" included all spectators, ROH § 29-5.1 would be unconstitutionally vague.  We agree.

"When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself.  And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose."  Cabrera, 90 Hawaiʻi at 365, 978 P.2d at 803 (quoting Gray v. Admin. Dir. Of the Court, 84 Hawaiʻi 138, 148, 931 P.2d 580, 590 (1997)).  "[W]here possible, we will read a penal statute in such a manner as to preserve its constitutionality."  Richie, 88 Hawaiʻi at 31, 960 P.2d at 1239 (quoting State v. Bates, 84 Hawaiʻi 211, 220, 933 P.2d 48, 57 (1997)).

ROH § 29-5.1 provides:

13

> (a)  It is unlawful for any solicitor or canvasser to engage in business on any public street, sidewalk or mall <u>where such person's operation tends to, or does impede or inconvenience the public or any person</u> in the lawful use of such street, sidewalk or mall.
>
> (b)  "Solicitor or canvasser," as used in this article, means any person, traveling by foot, or any other type of conveyance, or by wagon, automobile, motor truck, taking or attempting to take orders for sale of goods, wares, merchandise or other personal property for future delivery, or for services to be furnished or performed in the future, whether or not such person carries or exhibits any samples or collects advance payments on sale.  The term shall also include any person who, for oneself or for another hires, leases, uses or occupies any building, structure, tent, room, shop, vehicle or any other place for the sole purpose of exhibiting samples and taking orders for future delivery.

(Emphasis added.)

## 1.  The plain meaning of "operation" in ROH § 29-5.1 does not include spectators

"[T]he fundamental starting point for statutory interpretation is the language of the statute itself."  State v. Bayly, 118 Hawaiʻi 1, 6, 185 P.3d 186, 191 (2008).  Webster's Third New International Dictionary provides an instructive definition of "operation":

> **[O]perations** *pl* : . . . **b:** the whole process of planning for and operating a business or other organized unit <the [operation] of a large household> <the [operation] of a steel mill> **c:** a phase of a business or of business activity <the new forge shop has proved a valuable addition to our [operations]>

Operation, Webster's Third New International Dictionary, 1967 ed.); Frame v. City of Arlington, 657 F.3d 215, 227 (5th Cir. 2011) ("Webster's Dictionary broadly defines 'operations' as 'the

14

whole process of planning for and operating a business or other organized unit,' and defines 'operation' as a doing or performing especially of action.'" (alteration omitted)).

This definition seemingly refers to the <u>internal</u> functioning of a business, which is how other courts, in different contexts, have interpreted the term "business operations." See <u>Frame</u>, 657 F.3d at 227 (holding building and altering public sidewalks among "all the operations" of a public entity); <u>Stadium Chrysler Jeep, L.L.C. v. DaimlerChrysler Motors Co., LLC</u>, 324 F. Supp. 2d 587, 596 (D.N.J. 2004) ("[T]he natural language definition of 'business operations' means the actual performance or process of work as it relates to a company's business, commerce, trade or industry."); <u>Francis v. Armstrong Coal Reserves, Inc.</u>, No. 4:11-CV-00077-M, 2012 WL 5949466, at *5 (W.D. Ky. Nov. 28, 2012) (defining "business operations" as "all of the company's actions that relate to the planning for and operation of a business"). Similarly, lay definitions for "business operations" describe the term as an internal process for running a business: "Activities involved in the day to day functions of the business conducted for the purpose of generating profits." Business Operation, <u>BusinessDictionary</u>, http://perma.cc/39GH-CRJQ.

Thus, consonant with the term's definition and use in other contexts, "operation" in ROH § 29-5.1(a) means "the whole internal process of operating a business" - in other words, it refers to the area in which the defendant conducts their

15

business, such as a table for goods or a designated performance area. Bystanders or spectators, like customers, are not part of the internal operation of a business. Accordingly, the plain meaning of "operation" does not include people passing by who may stop to watch a performance.[5]

## 2. ROH § 29-5.1 should be interpreted narrowly

Even if "operation" were ambiguous and other constructions of the term could encompass bystanders, ROH § 29-5.1 cannot be read to support Zowail's conviction in light of other tools of statutory interpretation. See Bayly, 118 Hawaiʻi at 7, 185 P.3d at 192 (turning to canons of statutory construction to interpret ambiguous statute).[6] "Where possible,

_____

[5] ROH § 29-5.1 imposes liability if a solicitor engages in business "where such person's operation tends to, or does" impede or inconvenience any person. The phrase "tends to" could expand the meaning of "operation," so that any operation – like a performance – that attracts spectators "tends to" impede or inconvenience any person. However, if "tends to" were read in this manner, ROH § 29-5.1 would effectively ban performances in any public "street, sidewalk or mall" because any performance in such a space would "tend to" attract spectators and "inconvenience any person." See ROH § 29-5.1. This would unconstitutionally impede free expression by prohibiting speech without "leav[ing] open ample alternative channels of communication." State v. Bloss, 64 Haw. 148, 163, 637 P.2d 1117, 1128 (1981). Accordingly, we do not adopt such an interpretation of ROH § 29-5.1.

[6] While we can often interpret statutes in light of their purpose and legislative history, see Ruggiero, 114 Hawaiʻi at 231, 160 P.3d at 707, in this instance, the legislative history of ROH § 29-5.1 does not provide clarity. The current language of ROH § 29-5.1 ("Use of Streets and Sidewalks by Solicitors and Canvassers") has remained largely the same since it was first enacted by the Honolulu City Council in 1954. See ROH § 13-23.1 (1957); ROH § 13-23.1 (1961); ROH § 26-5.1 (1973). The provision was originally codified in the "General Welfare" section of the city ordinances, between articles regulating termite-infested lumber and the operation of skating rinks and moving picture shows. See ROH § 13-23.1 (1957). The minutes of city council meetings at the Honolulu city clerk's office do not contain any debates or reports that shed light on the city council's purpose in enacting the statute.

Today, "Use of Streets and Sidewalks by Solicitors and Canvassers" is codified as part of chapter 29, which governs streets, sidewalks, malls and

(continued...)

we will read a penal statute in such a manner as to preserve its constitutionality.  To accord a constitutional interpretation of a provision of broad or apparent unrestricted scope, courts will strive to focus the scope of the provision to a narrow and more restricted construction."  Id. at 7-8, 185 P.3d at 192-93 (quoting Bates, 84 Hawaiʻi at 220, 933 P.2d at 57).  Here, as Zowail argues, if "operation" includes any persons who stop to watch a performance, ROH § 29-5.1 may be unconstitutionally vague.

"We have consistently recognized that due process of law requires that a penal statute or ordinance state with reasonable clarity the act it proscribes and must also prescribe fixed standards for adjudging guilt when that person stands accused."  State v. Bloss, 64 Haw. 148, 163, 637 P.2d 1117, 1128 (1981) (holding Honolulu ordinance governing handbilling in Waikīkī unconstitutional and void for vagueness).

> Vague laws contravene the 'first essential of due
> process of law' that statutes must give people 'of
> common intelligence' fair notice of what the law
> demands of them. . . . [Further, vague] statutes
> threaten to hand responsibility for defining crimes to
> relatively unaccountable police, prosecutors, and
> judges, eroding the people's ability to oversee the
> creation of the laws they are expected to abide.

---

[6](...continued)
other public places.  Its purpose is straightforward: "The intent and purpose of this chapter is to promote the public welfare by regulating the use of all public sidewalks and malls."  ROH § 29-1.2 (1990).  Notably, however, "Use of Streets and Sidewalks by Solicitors and Canvassers" was not intended to prohibit all soliciting or canvassing on public sidewalks.  When it was enacted in 1954, the ROH also regulated – and still regulates – commerce in public places by requiring a license for "peddling" and imposing restrictions on lei sellers.  See ROH § 29-2.1, 6.2.

17

<u>United States v. Davis</u>, 139 S. Ct. 2319, 2325 (2019).

Moreover, we have recognized that vagueness presents a special danger in the First Amendment context:

> [A] vague statute affects basic First Amendment freedoms where the exercise of those freedoms would be inhibited unless the boundaries of forbidden conduct are clearly marked.
> We recognize that vagueness is a relative concept. Thus, when First Amendment rights are not implicated, a lesser degree of specificity in a statute is acceptable. However, where the First Amendment is implicated, a greater degree of specificity is necessary to avoid inhibiting speech and the free dissemination of information.

<u>Bloss</u>, 64 Haw. at 164, 637 P.2d at 1129 (citing <u>State v. Manzo</u>, 58 Haw. 440, 455, 573 P.2d 945, 955 (1977)) (internal citations omitted).

A vague ordinance "impermissibly delegate[s] policy matters to the subjective and ad hoc decision making of police officers on the beat, judges, and juries and may result in capricious or discriminatory action." <u>Id.</u> at 163–64, 637 P.2d at 1128 (quoting <u>Manzo</u>, 58 Haw. at 455, 573 P.2d at 955); <u>see also</u> <u>State v. Alangcas</u>, 134 Hawai\'i 515, 534, 345 P.3d 181, 200 (2015) ("[A] challenged statute is examined as to whether it is internally inconsistent and incomprehensible to a person of ordinary intelligence or invites delegation of basic policy matters to police for resolution on an ad hoc and subjective basis.").

ROH § 29-5.1(a) contains several undefined terms that sweep quite broadly, criminalizing any "operation" on a public sidewalk that "tends to" "inconvenience . . . any person." If

18

violation of the ordinance depends on the number of people who stop to look at a defendant's display – which a defendant has little control over – then ROH § 29-5.1 fails to provide the constitutionally required "fixed standards for adjudging guilt." Bloss, 64 Haw. at 163, 637 P.2d at 1128; see also State v. Beltran, 116 Hawaiʻi 146, 154, 172 P.3d 458, 466 (2007) (holding Honolulu camping ordinance unconstitutionally vague because, inter alia, "the standard requires the actor to view his or her conduct as a third person would, rather than informing the actor as to how to avoid violating the regulation," inviting ad hoc, subjective decision making by police officers).

In Bloss, we held ROH § 26-6.2,[7] which prohibited commercial handbilling in Waikīkī, unconstitutional and void for vagueness because it "fails to provide explicit standards for determining guilt."[8]  64 Haw. at 163, 165, 637 P.2d at 1128,

---

[7]     ROH § 26-6.2 provided in relevant part:

> (b)   . . . [I]t shall be unlawful for any person to sell or offer for sale, solicit orders for, or invite attention to or promote in any manner whatsoever, directly or indirectly, goods, wares, [etc.], or to carry on or conduct any commercial promotional scheme, advertising program or similar activity in the following areas:
> . . .
> (7)   Waikiki peninsula-upon the public streets, alleys, sidewalks, malls, parks, beaches or other public places in Waikiki. . . .

Bloss, 64 Haw. at 167, 637 P.2d at 1119–20.
        Notably, in 1981 when Bloss was decided, ROH § 26-6.2 was codified immediately after "Unlawful To Use Public Streets And Sidewalks For Certain Business Purposes," which at that time was codified at ROH § 26-5.1 (1978).

[8]     We also held that the regulation "impermissibly regulates protected commercial speech which violates the First Amendment of the United States Constitution, and Article I, Section 3 of the Hawaii State

(continued...)

1130.

For statutes that regulate forms of expression – even commercial speech is protected by the First Amendment, id. at 157, 637 P.2d at 1125 – vague language not only risks that the statute will not provide fair notice, but also presents "the danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application." Id. at 164, 637 P.2d at 1129 (quoting NAACP v. Button, 371 U.S. 415, 432–33 (1963)). "Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity." Id. Accordingly, statutes that regulate expressive conduct must "provide explicit standards for determining guilt." Id. at 165, 637 P.2d at 1130 (emphasis added). In other words, an ordinance must not be so vague that "judges, juries or police officers [can] create their own standards": "[T]he boundaries of forbidden conduct [must be] clearly marked" because whether conduct constitutes a violation should not be a subjective judgment. Id. at 163–64, 637 P.2d at 1128–29. In a similar context, we have held that a Honolulu city ordinance prohibiting "presence" at certain events void for vagueness because "[u]nless the activity at which presence is unlawful is in a narrowly confined place, determination of what constitutes presence at the activity can be resolved only on the basis of policy." State v. Abellano, 50

---

⁸(...continued)
Constitution." 64 Haw. at 162, 637 P.2d at 1128.

Haw. 384, 385, 441 P.2d 333, 334-35 (1968).

Here, neither ROH § 29-5.1 nor any other provision of Section 29 defines "operation," "tends to," "impede" or "inconvenience." Moreover, the statute explicitly sanctions any solicitor who inconveniences even a single person. The broad language of ROH § 29-5.1 leaves enforcement to the discretion of police officers, which is impermissible because it "may result in capricious or discriminatory action." Id. at 164, 637 P.2d at 1128.

If "operation" in ROH § 29-5.1 includes any person who stops to watch a performance even for a short period of time, the ordinance fails to provide an "explicit standard" to define at what point the number of spectators crosses the threshold into a violation or how long a spectator must watch a performance to become part of the business operation. Moreover, a person could set up a performance entirely on private property, but if the crowd that gathers spills onto public property, and the spectators are deemed part of the performer's "operation," then the performer could violate ROH § 29-5.1 without ever stepping onto public property. Whether the number of spectators "inconvenienced" any person would depend on the subjective opinion of a police officer.

Thus, the breadth of ROH § 29-5.1 leaves ample room for ad hoc decision making, as the record in this case demonstrates. For example, Officer Luther suggested that any crowd could present an inconvenience under ROH § 29-5.1: "Through my personal

21

experience, if there's a large crowd, I'm not going to barge my [way] through it, try to squeeze in tight.  Even if there was a foot or two of space, I would still feel more comfortable walking around as opposed to going through a crowd."  The State seemingly considered any person near Zowail's performance to be Zowail's responsibility – questioning Zowail on cross-examination about the number of people in his "near vicinity" and on his "side of the sidewalk within 20 feet."[9]  In closing, the State argued, "it was likely a moving crowd, a fluid crowd, [but] there was a large enough crowd to inconvenience the public."  Similarly, the ICA recognized that "at times the crowd was smaller and the public was not fully impeded in its use of the sidewalk," but it upheld Zowail's conviction because "there was sufficient evidence that Zowail's operation tended to or did, impede or inconvenience the public or any person."  Further the district court decided the fact that Zowail was performing in Waikīkī, as opposed to elsewhere in Honolulu, was a significant factor:

> [Sergeant Hamrick] described the crowd [as] it was not a free-flowing pedestrian sidewalk.  And that's important anywhere but also especially in Waikiki. . . . [O]bviously Mr. Zowail is a good performer and people enjoy watching that, but these officers were on duty in Waikiki to make sure that the sidewalks were safe for pedestrians.

In short, the record in this case shows a variety of interpretations as to what constituted the violation of ROH § 29-

---

[9]     Zowail did not know the answer to the State's question.  He estimated about 20 people were watching his performance, but testified that during his performance he was "doing [his] art" and didn't know how many people were nearby.

5.1 – yet none of these interpretations used an "explicit standard" to determine when a group of spectators becomes too large or when a passerby becomes part of a business operation. Moreover, once the number of spectators turns an operation into a violation of ROH § 29-5.1(a), "the ordinance does not sufficiently specify what those within its reach must do in order to comply." Hynes v. Mayor & Council of Borough of Oradell, 425 U.S. 610, 621 (1976) (holding ordinance regulating door-to-door solicitation and canvassing unconstitutionally vague). Thus, if the size of the crowd determines whether a defendant violates ROH § 29-5.1, the ordinance would be unconstitutionally vague.

Finally, "[u]nder the rule of lenity, the statute must be strictly construed against the government and in favor of the accused." Bayly, 118 Hawai'i at 15, 185 P.3d at 200 (quoting State v. Shimabukuro, 100 Hawai'i 324, 327, 60 P.3d 274, 277 (2002)). Thus, the rule of lenity also counsels in favor of a narrow interpretation of ROH § 29-5.1 and the term "operation."

For these reasons, even if the term "operation" is ambiguous, we must construe the term narrowly to include only those things over which the defendant has control and which can be objectively determined: the physical trappings of a defendant's business operation, such as a table for goods or a demarcated performance area.[10]

---

[10] Other statutes and ordinances ensure that Honolulu sidewalks remain "free-flowing." For example, Hawai'i Revised Statutes (HRS) § 852-1 requires persons to leave "ingress to or egress from any public or private

(continued...)

### 3.    Zowail's operation did not violate ROH § 29-5.1

The next question, then, is whether substantial evidence supports the conclusion that Zowail's operation – the table and its immediate surroundings – tended to or did impede or inconvenience the public.  We conclude it does not.

There was no evidence that Zowail's table or any of the physical apparatus associated with his operation actually inconvenienced members of the public.  The State's photographs showed a narrow table set up at the edge of the sidewalk.  Zowail testified that the table was two-feet wide, and that his entire set-up was no more than three-feet wide.  The officers did not contradict Zowail's testimony.

During closing arguments, the State focused solely on the size of the crowd, arguing that Zowail violated ROH § 29-5.1 because "a large crowd gather[ed] behind the defendant's performance," and "both officers testified as to how packed the area was. . . .  Sergeant Hamrick testified that the area was so packed that it was a can of sardines."  Further, the State "submit[ed] that it was likely a moving crowd, a fluid crowd, [but] there was a large enough crowd to inconvenience the public [and] [t]here was testimony that the crowd was facing Mr.

---

[10](...continued)
place," and makes it a crime to refuse to move after police ask them to "leave a free passageway for persons and vehicles[.]"  Similarly, Zowail's conduct in this case may have been unlawful under ROH § 29-6.2 (1990), which prohibits "peddling" – defined as "the sale or offer for sale, the renting or offer for rent, or the display for sale or rent of any goods, wares, merchandise, foodstuffs, or other kinds of property or services, . . . [as well as] the solicitation of orders," ROH § 29-1.1 – without a peddler's license.

Zowail." Similarly, the district court's finding that Zowail impeded or inconvenienced the public was based solely on the size of the crowd that formed: "[T]he size of that crowd did tend to or did impede or inconvenience the public[.]"

Nothing in evidence suggested that Zowail's table or the supplies in front of his table impeded or inconvenienced anyone. Thus, substantial evidence does not support the conclusion that Zowail's operation impeded or inconvenienced the public or any person, and Zowail's conviction must be reversed.[11]

**B.  The Charge Against Zowail was Deficient for Failing to Allege a State of Mind**

Although we reverse Zowail's conviction because he did not violate ROH § 29-5.1, we also take this opportunity to offer guidance about charging a violation of a municipal ordinance. "A charge that fails to charge a requisite state of mind cannot be construed reasonably to state an offense and thus the charge is dismissed without prejudice because it violates due process." State v. Apollonio, 130 Hawai'i 353, 359, 311 P.3d 676, 682 (2013). Here, neither the written complaint and summons Zowail received, nor the State's oral charge stated the requisite state of mind for ROH § 29-5.1. Accordingly, the charge was insufficient.

ROH § 29-5.1 does not expressly include a state of mind element: "It is unlawful for any solicitor or canvasser to engage

---

[11]      Because we vacate Zowail's conviction on this basis, we decline to reach the other issues he raises on appeal.

in business on any public street, sidewalk or mall where such person's operation tends to, or does impede or inconvenience the public or any person in the lawful use of such street, sidewalk or mall." However, ROH § 29-5.1 should not be read in a vacuum – offenses defined by municipal ordinances must be construed with reference to the general principles of liability established in the Hawai‘i Penal Code (HPC), just like offenses defined by other statutes and regulations. See Hawai‘i Revised Statutes (HRS) § 702-102(3) (2014) ("The provisions of chapters 701 through 706 of the Code are applicable to offenses defined by other statutes, unless the Code otherwise provides."); State v. Carvalho, 58 Haw. 314, 315, 568 P.2d 507, 508 (1977) (applying mens rea requirement in HRS § 702-204 to the Honolulu Traffic Code).

HRS § 702-204 provides that a state of mind is required for most offenses, even if it is not specified by statute:

Except as provided in section 702-212,[12] a person is

---

[12]     ROH § 29-5.1 does not fall under the exceptions in HRS § 702-212. HRS § 702-212 establishes two types of offenses to which the mens rea requirement in HRS § 702-204 does not apply: (1) "[a]n offense which constitutes a violation," or (2) a crime for which "a legislative purpose to impose absolute liability for such offense or with respect to any element thereof plainly appears. "First, ROH § 29-5.1 does not describe a violation because it is punishable by up to 30 days imprisonment. ROH § 29-5.2; compare HRS § 701-107(5)("An offense defined by . . . any other statute of this State constitutes a violation [1] if it is so designated in . . . the law defining the offense or [2] if no other sentence than a fine, or fine and forfeiture or other civil penalty, is authorized upon conviction.") with HRS § 701-107(4) ("A crime is a petty misdemeanor if. . . it is defined by a statute other than [the HPC] that provides that persons convicted thereof may be sentenced to imprisonment for a term not to exceed thirty days."). Second, a legislative intent to make ROH § 29-5.1 a strict liability offense does not "plainly appear." See State v. Armitage, 132 Hawai‘i 36, 319 P.3d 1044 (2014)(holding that a legislative intent to impose absolute liability did not "plainly appear" in a regulation because a conviction imposes the possibility of imprisonment, the statute did not expressly provide for strict liability, and
(continued...)

not guilty of an offense unless the person acted
intentionally, knowingly, recklessly, or negligently,
as the law specifies, with respect to each element of
the offense.  When the state of mind required to
establish an element of an offense is not specified by
the law, that element is established if, with respect
thereto, a person acts intentionally, knowingly, or
recklessly.

Thus, even though ROH § 29-5.1 does not specify a required state of mind, under HRS § 702-204, a defendant must, at a minimum, have acted recklessly in order to be guilty of violating the ordinance.

Here, the complaint and summons Zowail received did not describe the offense, and the State's oral charge did not include a state of mind element.  However, failure to allege a state of mind makes even an oral charge fatally defective.  State v. Elliott, 77 Hawaiʻi 309, 311, 884 P.2d 372, 374 (1994) ("[W]hether an accusation is in the nature of an oral charge, information, indictment, or complaint, [] the omission of an essential element of the crime charged is a defect in substance rather than of form." (quoting State v. Jendrusch, 58 Haw. 279, 281, 567 P.2d 1242, 1244 (1977))).  Accordingly, we remind courts and parties that even a charge alleging the violation of a municipal ordinance must comply with HRS § 702-204 and, where necessary, advise a defendant of the requisite state of mind.[13]

_____

[12](...continued)
the legislative history was silent on the issue).

[13]    Ordinarily, the remedy for a defective charge is dismissal without prejudice.  Armitage, 132 Hawaiʻi at 51, 319 P.3d at 1059.  However, that remedy is unnecessary here because, for the reasons discussed above, Zowail
(continued...)

## V. CONCLUSION

For the foregoing reasons, we hold that "operation" in ROH § 29-5.1 means the area in which a defendant conducts their business, and does not include spectators who stop to observe a defendant's business operation. Thus, notwithstanding the deficiency of the charge, Zowail did not violate ROH § 29-5.1. Accordingly, we vacate the November 12, 2019 judgment of the ICA, reverse Zowail's conviction, and remand this case to the district court for the entry of a judgment of acquittal.

| | |
|---|---|
| Jon N. Ikenaga<br>for petitioner | /s/ Mark E. Recktenwald |
| | /s/ Paula A. Nakayama |
| Donn Fudo<br>for respondent | /s/ Sabrina S. McKenna |
| | /s/ Richard W. Pollack |
| | /s/ Michael D. Wilson |



---

[13](...continued)
did not violate ROH § 29-5.1.